UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                          Chapter 7

Dott Acquisition, LLC,                                          Case No. 10-72255

       Debtor.                                                 Hon. Phillip J. Shefferly

_____/

TTOD Liquidation, Inc., and                                    Adversary Proceeding
Lapeer Plating & Plastics, Inc.,                               No. 11-05526-PJS

       Plaintiffs/Counter-Defendants,

v.

K. Jin Lim, Chapter 7 Trustee for
Dott Acquisition, LLC,

       Defendant/Counter-Plaintiff.

_____/

**AMENDED OPINION GRANTING IN PART PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**[1]

## Introduction

      This adversary proceeding arises out of an agreement for the purchase and sale of a business

in the automotive industry. Although originally structured as a purchase of all of the seller's assets,

the buyer did not have sufficient funds to close the deal. As a result, the parties changed the

structure of their agreement so that the seller sold only some of its assets to the buyer, and leased

_____

[1] On February 11, 2014, the Court issued an opinion (ECF No. 152). This amended opinion is being issued to add some additional citations and make a few minor edits. This amended opinion replaces and supercedes the original opinion, but the amendments made do not change in any respect the Court's rulings set forth in the original opinion.

other assets to the buyer, including the seller's real property and equipment. Their plan was to have the buyer eventually purchase the real property and equipment from the seller. When that did not happen, the seller sued the buyer in state court. The buyer counterclaimed. After extensive litigation, the state court ruled in favor of the seller and against the buyer, granting the seller a very large money judgment. The seller then evicted the buyer from the real property it had leased to the buyer and took back the equipment that it had leased to the buyer. After the litigation, the seller and the buyer signed a settlement agreement pursuant to which the buyer transferred any remaining rights to any of its business assets to a company related to the seller.

Shortly after the settlement agreement was made, some creditors of the buyer filed an involuntary bankruptcy petition against it. The petition was not contested. After the order for relief was entered, the Chapter 7 trustee took the position that all of the assets that the seller had previously agreed to sell to the buyer were property of the bankruptcy estate based on a number of different theories. The seller disagreed. To resolve the dispute, the seller and its related company filed this adversary proceeding, seeking a declaratory judgment that the bankruptcy estate does not have any property interest in the seller's assets. The trustee counterclaimed, asserting various theories as to why the bankruptcy estate should be declared the rightful owner of those assets. In addition, even if the bankruptcy estate does not *own* such assets, the trustee's counterclaim advances a number of theories as to why the bankruptcy estate should still be able to *recover* those assets for the benefit of creditors.

After a long and tangled procedural path, the seller and its related company filed a motion for summary judgment. The trustee filed her own motion for partial summary judgment. For the reasons set forth in this opinion, the Court will grant in part the motion for summary judgment filed

by the seller and its related company, and will deny the trustee's motion for partial summary judgment.

**Jurisdiction**

The United States District Court for the Eastern District of Michigan has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b). Pursuant to 28 U.S.C. § 157(a), each district court is authorized to refer to the bankruptcy judges for the district any or all proceedings arising under Title 11 or arising in or related to a case under Title 11. The District Court for the Eastern District of Michigan has referred this adversary proceeding to the Bankruptcy Court for the Eastern District of Michigan by Local District Court Rule 83.50(a). Further, by opinion and order entered on October 26, 2012 in case no. 12-12133 ("Reference Opinion"), the District Court for the Eastern District of Michigan specifically determined not to withdraw the reference of this adversary proceeding. As a result, the Court concludes that it has jurisdiction to hear this adversary proceeding. However, there remain substantial unresolved issues regarding the extent of the Court's authority to enter a final order or judgment with respect to the claims and counterclaims.

In the Reference Opinion, the District Court recognized that this adversary proceeding involves both core and non-core claims.[2] The Reference Opinion then discussed the Supreme Court's opinion in Stern v. Marshall, 131 S.Ct. 2594 (2011), and the questions that it raises regarding the constitutional authority of a bankruptcy court to render a final order or judgment with

---

[2] The complaint in this adversary proceeding alleges that all of its claims are core. The counterclaim in this adversary proceeding alleges that its claims are both core and non-core. The Fed. R. Civ. P. 26(f) report filed by the parties states that all of the claims in both the complaint and counterclaim are non-core. The Court agrees with the Reference Opinion: some of the claims and counterclaims are core, and others are non-core.

-3-

respect to certain core claims. The Reference Opinion held that this Court can enter a final judgment on the core claims at issue, but must submit to the District Court proposed findings of fact and conclusions of law regarding the non-core claims at issue, since the parties have not consented to this Court entering a final order or judgment on any non-core claims.

Around the same time that the District Court issued the Reference Opinion, the Sixth Circuit Court of Appeals issued its opinion in <u>Waldman v. Stone</u>, 698 F.3d 910 (6th Cir. 2012), holding that constitutionally grounded objections to the authority of a bankruptcy court to adjudicate core claims based upon <u>Stern</u> cannot be waived.[3] <u>Waldman</u>'s construction of <u>Stern</u> raises still more questions about this Court's authority to enter any final order or judgment in this adversary proceeding, even as to any of the core claims in the complaint and counterclaim, notwithstanding the holding of the District Court in the Reference Opinion.

However, the Court need not resolve all of the questions concerning its jurisdictional and constitutional authority at this time. After considering the motions presently before it in this adversary proceeding, the Court intends to enter an order pursuant to this opinion that does not dispose of all of the claims and counterclaims at issue in this adversary proceeding. Therefore, it is not a final order or judgment, and the Court need not determine, at least for today, whether the Court is authorized to enter a final order or judgment on any of the claims or counterclaims in this adversary proceeding. For now, the Court is satisfied that the District Court for the Eastern District of Michigan has jurisdiction over all of the claims and counterclaims in this adversary proceeding,

---

[3] Recently, on January 14, 2014, the Supreme Court heard oral argument in <u>Executive Benefits Insurance Agency v. Arkinson</u> (<u>In re Bellingham Insurance Agency, Inc.</u>), 702 F.3d 553 (9th Cir. 2012), Supreme Court Docket No. 12-1200, regarding a split in the circuit courts over the application of <u>Stern</u> to adversary proceedings where parties have consented to the bankruptcy court entering a final order or judgment as to the types of core claims discussed in <u>Stern</u>.

and that it has referred this adversary proceeding to this Court pursuant to its Local District Court Rule 83.50(a) and the Reference Opinion.

After the issuance of this opinion and the entry of a non-final order memorializing the rulings made in this opinion, the Court will confer with the parties and construct a procedure and schedule for the parties to fully brief the application of <u>Stern</u> and <u>Waldman</u> to this adversary proceeding. Following that procedure and schedule, the Court will then consider whether it has the constitutional authority to enter any final order or judgment in this adversary proceeding, and determine the extent to which its rulings will have to be submitted to the District Court in the form of proposed findings of fact and conclusions of law. In sum, the Court finds that it has jurisdiction to hear this adversary proceeding, deferring for now the question of whether this Court has the authority to enter any final order or judgment, or may only make recommendations to the District Court.

## Facts

Based upon its review of the motions and accompanying papers filed by the parties, the Court finds that the following facts are not in dispute.

DOTT Industries, Inc. ("DOTT") is a Michigan corporation located in southeast Michigan that was engaged in the manufacture of chrome-plated, plastic injection molded parts used in the automotive industry. By 2007, DOTT owned three different plants and had approximately 250 employees. It did business with General Motors, Chrysler and other automotive companies. DOTT was owned 50% by C. Michael Kojaian ("Kojaian") and 50% by his father.

In June, 2007, William S.B. Gruits ("Gruits") formed a company by the name of Dott Acquisition, LLC ("Dott Acquisition") for the purpose of acquiring all of the assets of DOTT, and using those assets to begin its own automotive supplier business. To help Dott Acquisition finance the purchase, Gruits obtained a $6 million loan from the Police and Fire Retirement System of the

City of Detroit, and obtained a $15 million loan commitment from PNC Bank. With its financing apparently in place, Dott Acquisition made an offer to purchase DOTT's assets in June, 2008.

On October 17, 2008, DOTT, as seller, and Dott Acquisition, as purchaser, entered into a Closing Agreement ("Closing Agreement"). The Closing Agreement provided that Dott Acquisition would purchase substantially all of DOTT's assets, including its real property, equipment, inventory, accounts receivable and the other assets used in the operation of its business. The purchase price was a combination of cash and an assumption of liabilities, all of which was detailed in the Closing Agreement. Unfortunately, PNC Bank withdrew its commitment to finance the purchase. Without that financing, Dott Acquisition was not able to purchase all of the assets of DOTT. But the parties still wanted to go forward with a transaction, so they restructured the deal.

On January 20, 2009, the parties signed a First Amendment to Closing Agreement ("First Amendment"). The First Amendment delayed the purchase of the real property and equipment. Instead of immediately purchasing DOTT's real property and equipment, Dott Acquisition would lease them for a period of six months, with the intention that it would eventually obtain the necessary financing to purchase them from DOTT. Dott Acquisition would still purchase DOTT's inventory, but would only receive a bill of sale for the inventory after it had paid specified amounts post-closing. Until those payments were made, DOTT would consign the inventory to Dott Acquisition to use in its business. But Dott Acquisition would still go forward and immediately close the purchase of the other assets that DOTT used in its business.

To implement the change in the structure of the deal, on January 20, 2009, DOTT and Dott Acquisition entered into three separate Amended and Restated Industrial Leases ("Real Property Leases"), one for each of the three plants ("Real Property") at which DOTT operated its business. In addition, DOTT and Dott Acquisition entered into an Amended and Restated Equipment Lease

-6-

("Equipment Lease") for the lease of DOTT's equipment ("Equipment"). The Real Property Leases and the Equipment Lease each provided for a term of 180 days. Again, the concept was that Dott Acquisition would immediately purchase some of the assets of DOTT necessary to operate the business, until it could obtain the necessary financing to purchase the remaining assets.

In addition to the Closing Agreement, the Equipment Lease and the Real Properties Leases, the parties signed other documents on January 20, 2009. One of those documents was an Amended and Restated Escrow Agreement ("Escrow Agreement"). Pursuant to the Escrow Agreement, DOTT executed three covenant deeds, one for each parcel of Real Property, a bill of sale for the Equipment and a bill of sale for the inventory. The deeds and the bills of sale were placed in escrow along with other specified documents. The Escrow Agreement provided that the escrow agent would release the escrowed documents upon Dott Acquisition paying specified amounts to DOTT. To secure the payment of all of Dott Acquisition's obligations to DOTT, the parties also signed on January 20, 2009, two separate Amended and Restated Security Agreements ("Security Agreements") granting DOTT a security interest in all of Dott Acquisition's inventory ("Inventory") and accounts ("Accounts").[4] On February 13, 2009, the parties signed a Second Amendment to Closing Agreement ("Second Amendment") providing for the sale by DOTT of its pre-closing accounts receivable.

After the closing on January 20, 2009, Dott Acquisition basically took over a turn key business operation. DOTT then changed its name to TTOD Liquidation, Inc. (now referred to as

_____

[4] DOTT had already filed a UCC-1 financing statement with the Michigan Department of State on October 7, 2008 that covered Dott Acquisition's "equipment" and "inventory," and then filed an amended UCC-1 financing statement with the Michigan Department of State on October 17, 2008 that deleted "equipment," but added "accounts" to the description of the collateral covered.

-7-

"TTOD").  As the managing member in control of Dott Acquisition, Gruits hired former employees of TTOD to run the business.  One of those employees was Larry Gatt ("Gatt").  Gatt had worked for TTOD as its chief executive officer and chief financial officer prior to the closing on January 20, 2009.  After the closing, Gatt took basically the same position with Dott Acquisition.  Gatt stayed in that position with Dott Acquisition until March, 2009, when he took a medical leave.

Unfortunately, things did not go as well after the closing as the parties had hoped.  On July 8, 2009, TTOD filed two state court lawsuits in Oakland County Circuit Court ("Circuit Court"), one against Dott Acquisition and the other against Gruits.  In the lawsuit against Dott Acquisition ("Oakland County Lawsuit"), TTOD alleged that Dott Acquisition had breached the Closing Agreement, the Real Estate Leases, the Equipment Lease, and the other documents that had been executed in connection with the Closing Agreement.  In the lawsuit against Gruits, TTOD alleged that Gruits had breached his personal guaranty of Dott Acquisition's obligations.  Dott Acquisition vigorously defended the Oakland County Lawsuit.  In addition, Dott Acquisition filed a counterclaim in the Oakland County Lawsuit in which it sought rescission of the Closing Agreement, a judgment for fraud, a judgment for conversion, a judgment for unjust enrichment and, in paragraph 58 of its counterclaim, a declaratory judgment that:

> (a) TTOD may not assert any breach of contract claim against Dott [Acquisition],
> (b) Dott [Acquisition] is not in breach of any agreement of any kind with TTOD,
> (c) TTOD is not entitled to the return of any real or personal property from [Dott Acquisition], and (d) TTOD has no right to maintain any action of any kind against Dott [Acquisition] seeking return of the real and/or personal property.

On September 14, 2009, TTOD filed more state court litigation against Dott Acquisition. Specifically, TTOD filed three separate state court landlord-tenant eviction proceedings ("Eviction Proceedings") to evict Dott Acquisition from the Real Property.  One of the Eviction Proceedings was filed in the 71A District Court to evict Dott Acquisition from 395 DeMille Road, Lapeer,

-8-

Michigan. The second was filed in the 73A District Court to evict Dott Acquisition from 3768 North Main Street, Deckerville, Michigan. The third was filed in the 73A District Court to evict Dott Acquisition from 3729 Marquette, Deckerville, Michigan. In each of the three Eviction Proceedings, TTOD alleged that it had a right to immediate possession of the Real Property pursuant to the respective Real Property Lease for such Real Property. Dott Acquisition vigorously defended the three Eviction Proceedings, raising many of the same defenses that it raised in the Oakland County Lawsuit. For example, in paragraph 2 of its answer to the amended/supplemental complaint that it filed in the Eviction Proceeding in the 71A District Court, Dott Acquisition stated that it

> admits only that TTOD currently holds a deed to the property. Dott [Acquisition] denies as untrue that TTOD should be deemed the lawful owner of the property and affirmatively states that it should be deemed the owner of the property. Dott [Acquisition]'s claim for ownership is currently pending before Judge Edward Sosnick in Dott [Acquisition]'s counterclaims [in] Oakland County Circuit Civil Action No. 09-102138-CK.

Further, in paragraph 3 of its affirmative defenses that it filed in that Eviction Proceeding, Dott Acquisition alleged that "[TTOD's] claims are barred because [TTOD] is not the lawful owner of the subject property."

While TTOD and Dott Acquisition were locked in litigation, Gruits and Dott Acquisition operated the business. But the litigation continued to heat up. On December 9, 2009, TTOD filed a motion in the Oakland County Lawsuit to compel Dott Acquisition to surrender its assets to TTOD pursuant to the terms of the Closing Agreement, the Real Property Leases and the Equipment Lease or, in the alternative, to appoint a receiver over the business operations of Dott Acquisition.

To resolve TTOD's motion for surrender of assets or to appoint a receiver, TTOD and Dott Acquisition entered into an Interim Agreement ("Interim Agreement") on December 15, 2009. Pursuant to the Interim Agreement, an individual who was acceptable to both TTOD and Dott

Acquisition was brought in to run the business operations of Dott Acquisition on an interim basis during the litigation between the parties. Although there is some dispute as to who first thought of bringing this individual in, both sides agreed that TTOD's motion would be resolved if Dott Acquisition brought back Gatt to serve as its chief executive officer and chief financial officer. Paragraph 3 of the Interim Agreement specified that:

> Gatt shall be Dott [Acquisition]'s Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), and in charge of Dott [Acquisition]'s business operations, subject to TTOD's consent, which may be withdrawn at any time, with or without cause. Dott [Acquisition], its affiliates and its constituents shall have no authority to remove Gatt or interfere with his activities as Dott [Acquisition]'s CEO and CFO without TTOD's consent. So long as this Agreement remains in effect, no person other than Gatt shall have access to or authority to control or disperse any funds of Dott [Acquisition] or transfer or assign any of its assets (including, but not limited to, accounts receivable and contract rights).

Gatt's compensation, and his powers as CEO and CFO, were spelled out in a handwritten agreement prepared by Michael J. Smith, chief legal counsel for Dott Acquisition. Although paragraph 3 of the Interim Agreement made it clear that Gatt could not be removed as CEO and CFO without TTOD's consent, neither the Interim Agreement nor the handwritten agreement signed by Gatt with Dott Acquisition stated that TTOD would have any say in how Gatt would operate Dott Acquisition's business, nor did either of those documents state that TTOD would have control over how Gatt exercised his powers as CEO and CFO of Dott Acquisition.

Notwithstanding the Interim Agreement, which placed Gatt – an individual acceptable to both TTOD and Dott Acquisition – in control of Dott Acquisition's business, more disputes arose between TTOD and Dott Acquisition. On February 12, 2010, TTOD filed a motion in the Oakland County Lawsuit to enforce the Interim Agreement based upon allegations that Dott Acquisition and Gruits had violated the Interim Agreement. On February 16, 2010, the Circuit Court granted the motion and entered an order holding that the Interim Agreement remained in effect, but also

determining to appoint a special master to oversee the business operations of Dott Acquisition.[5]

Two days later, the Circuit Court entered an order appointing Barry L. Howard as the special master, and giving him authority to review offers for any sale or transfer of Dott Acquisition's assets or refinancing its liabilities. The order did not give the special master any authority to run the day-to-day business of Dott Acquisition, which remained in Gatt. This order stated again that the Interim Agreement continued to remain in effect, and further stated that Gruits did not have any authority to enter into any agreement on behalf of Dott Acquisition with respect to the financing, transfer or sale of its assets, or regarding its business operations, without the consent of both the special master and TTOD. The order further provided that Gatt would continue to remain the CEO and CFO of Dott Acquisition pursuant to the terms of the Interim Agreement.

Sometime in early 2010, TTOD filed a motion in the Oakland County Lawsuit for summary disposition on its claims against Dott Acquisition and on the counterclaims and defenses filed by Dott Acquisition.[6] Dott Acquisition opposed TTOD's motion, arguing that the Circuit Court should disregard the Real Property Leases and the Equipment Lease, declare the Real Property Leases to be mortgages, hold that TTOD had transferred ownership of the Real Property and the Equipment to Dott Acquisition, and declare that Dott Acquisition, not TTOD, is the true owner of both the Real Property and the Equipment.

---

[5] The Michigan Court Rules do not define "special master." Black's Law Dictionary (6th ed. West 1990) at page 975 defines "special master" as "[a] master appointed to act as the representative of the court in some particular act or transaction, as, to make a sale of property under a decree."

[6] This was actually the second motion for summary disposition filed by TTOD in the Oakland County Lawsuit. On October 9, 2009, the Circuit Court issued an opinion and order denying TTOD's first motion for summary disposition.

On June 9, 2010, the Circuit Court issued an Opinion and Order Re: Plaintiff's Renewed Motion for Summary Disposition ("Opinion") in the Oakland County Lawsuit. The Opinion first recited the background of the transactions between TTOD and Dott Acquisition. The Opinion then found that there were no genuine issues of material fact in dispute. The Opinion next discussed the legal arguments raised by Dott Acquisition in defense of TTOD's motion. In ruling for TTOD and against Dott Acquisition, the Opinion concluded as follows:

> WHEREFORE, IT IS HEREBY ORDERED that plaintiff's motion for summary disposition is granted as to the plaintiff's claim for breach of contract and as to the defendant's counter-claims. The plaintiff may enter a judgment in the amount of $9,248,434, as supported by the unopposed affidavit of Thomas Alongi, which judgment shall be the final order.

On June 23, 2010, the Circuit Court entered a judgment ("Judgment") pursuant to the Opinion. The Judgment reads in its entirety as follows:

> THIS MATTER having come before the Court on Plaintiff's Renewed Motion for Summary Disposition, by which Plaintiff sought summary disposition in its favor on its Complaint and the dismissal of Defendant's Counter-Complaint, and on June 9, 2010, the Court having issued its Opinion and Order, which granted Plaintiff's Motion for Summary Disposition as to the Plaintiff's Breach of Contract Claim and as to Defendant's Counter-Claims which contains certain findings regarding undisputed issues of material fact and TTOD's right to judgment as a matter of law ("Findings") and ordered the entry of a judgment in favor of the Plaintiff, and the Court being advised in the premises,
>
> NOW, THEREFORE,
>
> IT IS HEREBY ORDERED AND ADJUDGED that in accordance with the Court's June 9, 2010 Opinion and Order, Judgment is entered in favor of Plaintiff TTOD Liquidation, Inc. and against Defendant Dott Acquisition, LLC in the amount of Nine Million, Two Hundred Forty-eight Thousand, Four Hundred and Thirty-four Dollars ($9,248,434.00), plus judgment interest pursuant to MCL 600.6013 in the amount of Two Hundred Eighty-nine Thousand, Nine Hundred Fifty-three and 87/100 Dollars ($289,953.87).
>
> IT IS FURTHER ORDERED that Plaintiff is awarded its attorney fees pursuant to Sections 9.1 and 9.2 of the Closing Agreement, in the amount of

$266,445.00. The attorney fee award, plus interest on the attorney fee award pursuant to MCL 600.6013, shall be added to the judgment.

IT IS FURTHER ORDERED that all this judgment shall accrue interest from the date of entry at the statutory interest rate for money judgments. Additionally, Plaintiff is awarded its costs of $350.00 as prevailing parties in accordance with MCR 2.625(A).

IT IS FURTHER ORDERED that the Findings are incorporated into this Judgment.

IT IS FURTHER ORDERED that this judgment resolves the last pending claim and closes the case.

IT IS SO ORDERED.

Neither TTOD nor Dott Acquisition appealed the Judgment.

At TTOD's request, on June 23, 2010 and June 24, 2010, the Circuit Court entered separate orders ("Post-Judgment Orders") enjoining Dott Acquisition and Gruits from transferring any of the assets of Dott Acquisition and explaining that both orders were "issued pursuant to MCL 600.6104 to protect the interests of a Judgment Creditor." Because TTOD had also obtained a separate judgment in its lawsuit against Gruits, the Circuit Court entered a similar order in that lawsuit also enjoining Gruits individually from transferring any of his assets.

Following entry of the Judgment, TTOD finished prosecuting the Eviction Proceedings. Notwithstanding the Opinion, which disposed of all of Dott Acquisition's counterclaims against TTOD in the Oakland County Lawsuit, Dott Acquisition again took the position in each of the Eviction Proceedings that Dott Acquisition was not a tenant under the Real Property Leases but instead was the true owner of the Real Property, and that TTOD could not lawfully terminate its rights to possess the Real Property. Each court in the Eviction Proceedings ruled in favor of TTOD and against Dott Acquisition and entered an eviction order (collectively, the "Eviction Orders"), setting forth its ruling. On June 24, 2010, the 71A District Court entered an order evicting Dott

-13-

Acquisition from 395 DeMille Road, Lapeer, Michigan. On September 15, 2010, the 73A District Court entered an order evicting Dott Acquisition from 3768 North Main Street, Deckerville, Michigan. On September 15, 2010, the 73A District Court entered an order evicting Dott Acquisition from 3729 Marquette, Deckerville, Michigan.

On July 15, 2010, Gatt resigned from Dott Acquisition. TTOD proceeded to take possession of all of the business assets that were previously used by Dott Acquisition in the operation of its business. Although the precise date is not clear from the record, Dott Acquisition terminated all of its employees and ceased transacting business during or about July, 2010, but not without one last fight. On June 24, 2010, Gruits caused Dott Acquisition to wire $90,000.00 to Schafer and Weiner, PLLC, a law firm, to have it represent Dott Acquisition in filing a bankruptcy case. However, the Circuit Court soon ruled that the transfer of these funds to Schafer and Weiner, PLLC was not lawful, and directed that the funds be returned to Dott Acquisition.

With the Judgment in the Oakland County Lawsuit having become final, with no appeal taken, and the Eviction Orders in the Eviction Proceedings also having become final, with no appeals taken, and with the Circuit Court having held that Gruits unlawfully caused Dott Acquisition to transfer a retainer to a law firm to file a bankruptcy case for Dott Acquisition, Dott Acquisition threw in the towel. On September 21, 2010, TTOD and Dott Acquisition entered into a Settlement Agreement ("Settlement Agreement"). Gruits and Dott Acquisition expressly represented in paragraph 13 of the Settlement Agreement that they had full authority to enter into the Settlement Agreement on behalf of Dott Acquisition and warranted that all of the members and managers of Dott Acquisition had duly authorized and consented to the execution of and the terms and provisions in the Settlement Agreement.

The Settlement Agreement recited the history of the transactions between TTOD and Dott Acquisition and the history of the litigation between them both in the Oakland County Lawsuit and in the Eviction Proceedings. Dott Acquisition expressly acknowledged in paragraph 3 of the Settlement Agreement that it had been "ordered to relinquish possession and move out of" the Real Property by the Eviction Orders, and that it "claims no further interest in those properties or any control thereof and of the personal property located thereat." In the same paragraph, Dott Acquisition further stated that it "acknowledges that the previously entered into Real Estate and Equipment Leases between TTOD as Lessor and [Dott Acquisition] as Lessee are terminated and title to such property and assets remains in TTOD, as does possession thereof, free and clear of all claims, rights and interests of [Dott Acquisition] or any person or entity claiming through [Dott Acquisition]." In paragraph 4, Dott Acquisition agreed that it "does hereby, surrender and transfer ownership and all of its right, title and interest in and possession of, and any claim to any right, title or interest in, all of its assets of every kind and nature, to Lapeer Plating & Plastics, LLC."[7] Finally, in paragraphs 14 and 15 of the Settlement Agreement, Dott Acquisition released TTOD and Lapeer from all claims of any nature whatsoever, including any claims that were raised or could have been raised in the Oakland County Lawsuit and the Eviction Proceedings. In exchange for the covenants and the transfers described in the Settlement Agreement, which were expressly made subject to specifically identified security interests and other claims against such property, the Settlement Agreement provided that Dott Acquisition would receive a credit against the Judgment and other consideration.

---

[7] Lapeer Plating & Plastics, LLC ("Lapeer") is a Michigan corporation formed on June 28, 2010 by Kojaian, who was also its president and sole shareholder. Lapeer is the entity that was described in the Introduction to this opinion as the "company related to the seller."

-15-

Attached to the Settlement Agreement were two Assignments ("Assignments"), each signed by Gruits as the manager of Dott Acquisition. In the first Assignment, Dott Acquisition transferred and assigned to Lapeer "[a]ll of its assets of every kind and nature, including but not limited to all accounts, accounts receivable, inventory, raw materials, work in process . . . ." In the second Assignment, Dott Acquisition transferred and assigned the "benefits but not the past obligations and liabilities of all contracts with customers" of Dott Acquisition.

Since the time that the Settlement Agreement was made, Lapeer has operated the business that was originally owned by TTOD and that was the subject of the Closing Agreement and related transactions between TTOD and Dott Acquisition. Gatt is now the chief executive officer of Lapeer, having joined Lapeer after he resigned from Dott Acquisition on July 15, 2010.

On October 21, 2010, an involuntary petition for relief was filed against Dott Acquisition. It was not opposed. On November 23, 2010, an order for relief under Chapter 7 was entered. The Chapter 7 case was assigned to the Honorable Steven W. Rhodes. K. Jin Lim ("Trustee") was appointed as the Chapter 7 trustee.

### Procedural history in the bankruptcy case

On January 7, 2011, the Trustee filed schedules of assets and liabilities and a statement of financial affairs for Dott Acquisition. The Trustee attached a "disclaimer" in which she explained that she prepared the schedules and statement of financial affairs "by gathering the best information she [was] able to obtain through Trustee's counsel and through testimony of Debtor's former manager, William Gruits . . . ." Despite the Judgment and the Eviction Orders, and in direct contradiction of the Settlement Agreement and Assignments, schedule A states that Dott Acquisition has an interest in the Real Property, and schedule B states that Dott Acquisition owns the Equipment, Inventory and Accounts. Further, despite the Judgment that dismissed Dott

-16-

Acquisition's defenses and counterclaims in the Oakland County Lawsuit, and the Eviction Orders that rejected similar defenses and counterclaims in the Eviction Proceedings, and notwithstanding the release of all claims in the Settlement Agreement, schedule B also states that Dott Acquisition holds "claims against TTOD, Inc. and its affiliates or assigns for conversion, wrongful eviction, successor liability and equitable subordination."

On February 3, 2011, Gruits testified on behalf of Dott Acquisition at the § 341 meeting. When asked whether Dott Acquisition ever held deeds to the Real Property, Gruits admitted that it did not. When asked about the claims against TTOD that are listed in the answer to question no. 21 on Dott Acquisition's schedule B, Gruits admitted that these are the very same claims made by Dott Acquisition against TTOD in the Oakland County Lawsuit, that those claims had been dismissed by the Judgment, and that no appeal had ever been filed from the Judgment. Gruits also admitted that he had signed the Settlement Agreement, which released any claims against TTOD.

Because they were alarmed by the information listed by the Trustee on Dott Acquisition's schedules A and B, all of which came from Gruits, TTOD and Lapeer filed this adversary proceeding on May 11, 2011. The complaint contains four counts. Count I seeks a declaratory judgment that TTOD is the owner of the Real Property and Equipment. Count II seeks a declaratory judgment that Lapeer is the owner of the Inventory and Accounts. Count III seeks a declaratory judgment that the security interests that Dott Acquisition granted to TTOD in the Security Agreements were properly perfected and are superior to any interest that the Trustee may have in any property covered by the Security Agreements. Count IV seeks an injunction prohibiting the Trustee from interfering with the rights of TTOD and Lapeer to the Real Property, Equipment, Inventory and Accounts.

After the adversary proceeding was filed, the Trustee requested the Bankruptcy Court to stay its prosecution to permit the Trustee to conduct Fed. R. Bankr. P. 2004 examinations in an effort to learn more about Dott Acquisition, its business, and the pre-petition transactions that it had entered into with TTOD and Lapeer. Recognizing that this is an involuntary bankruptcy case in which the Chapter 7 debtor did not have complete books and records to turn over to the Trustee, the Court permitted the Trustee to conduct Rule 2004 examinations and issue various discovery requests. To give the Trustee a full opportunity to do so before having to defend this adversary proceeding, the Court stayed the adversary proceeding, initially for three months.

During the stay, the Trustee issued a number of discovery requests pursuant to Rule 2004 and obtained a large volume of documents. The Trustee and TTOD fought over the extent of the Trustee's discovery requests on a number of occasions. TTOD was ordered to turn over documents to the Trustee. Because of the extensive discovery requested by the Trustee, the Court granted the Trustee's requests to extend the stay on two more occasions, extending it for another six months, for a total of nine months altogether. On March 28, 2012, the Court terminated the stay of the adversary proceeding and required the Trustee to file an answer by April 25, 2012.

The Trustee timely filed an answer to the complaint. The Trustee also filed a twelve count counterclaim against TTOD and Lapeer. The counterclaim alleges that Dott Acquisition, the debtor, is the true owner of all of the business assets of TTOD and Lapeer. More specifically, the counterclaim alleges that Dott Acquisition purchased all of the Real Property, Equipment, Inventory and Accounts from TTOD and that the Real Property Leases and Equipment Lease were essentially sham transactions. The counterclaim alleges that it was always Dott Acquisition's intention to purchase all of TTOD's assets and that the Court should look past the actual documents that were signed and instead recognize that Dott Acquisition effectively did purchase all of TTOD's assets,

-18-

including the Real Property, Equipment, Inventory and Accounts. The counterclaim contains the following counts for relief:

- Count I, equitable subordination

- Count II, successor liability

- Count III, alter ego

- Count IV, substantive consolidation

- Count V, preferential transfers

- Count VI, fraudulent transfers – actual fraud

- Count VII, fraudulent transfers – constructive fraud

- Count VIII, statutory and common law conversion

- Count IX, stay violation

- Count X, turnover

- Count XI, accounting

- Count XII, unjust enrichment

Although the adversary proceeding was now one year old and just getting off the ground, it soon had another delay. On May 4, 2012, TTOD, Lapeer and the Trustee filed a joint motion to withdraw the reference of this adversary proceeding from the Bankruptcy Court to the United States District Court for the Eastern District of Michigan. Further, while the District Court was considering the motion to withdraw the reference, TTOD, Lapeer and the Trustee also filed a joint motion requesting the Bankruptcy Court to again stay the adversary proceeding until the District Court decides the motion to withdraw the reference. On May 30, 2012, the Bankruptcy Court granted that motion, again staying the adversary proceeding.

-19-

On June 18, 2012, the District Court denied the parties' joint motion to withdraw the reference. TTOD, Lapeer and the Trustee filed a motion for reconsideration with the District Court. On July 25, 2012, the District Court entered an opinion and order granting the motion for reconsideration and withdrawing the reference of this adversary proceeding from the Bankruptcy Court to the District Court. The adversary proceeding then remained before the District Court until October 26, 2012, when the District Court sua sponte issued the Reference Opinion, revisiting its earlier decision, now concluding that the reference of this adversary proceeding to the Bankruptcy Court should not have been withdrawn, and sending the adversary proceeding back again to the Bankruptcy Court.

Once the adversary proceeding was back in the Bankruptcy Court, the Court held a scheduling conference and set a schedule for discovery, pretrial proceedings and trial. Discovery was taken both by TTOD and Lapeer, on the one hand, and the Trustee, on the other hand. The parties continued to disagree regarding discovery, if not to the same extent and frequency shown on the docket in the main bankruptcy case.

On June 26, 2013, TTOD and Lapeer filed a motion (ECF No. 113) for summary judgment on counts I through III of their complaint and for summary judgment on all counts of the Trustee's counterclaim.[8] On July 9, 2013, the Court entered an order setting a schedule for the Trustee to respond to the motion, and scheduling a hearing on the motion on August 19, 2013. The Court also held any further discovery in abeyance pending its ruling on the motion. The Trustee timely filed a response. On August 14, 2013, the Trustee also filed her own motion for partial summary

---

[8] TTOD and Lapeer did not move for summary judgment as to count IV of their complaint, which requests injunctive relief against the Trustee.

judgment (ECF No. 126) on one issue in her counterclaim, seeking a determination that TTOD is an "insider" of Dott Acquisition for purposes of § 547 of the Bankruptcy Code.

Before TTOD and Lapeer's motion for summary judgment could be heard, and before a response to the Trustee's motion for partial summary judgment was filed, this adversary proceeding was delayed further when it was reassigned on August 15, 2013 from the docket of Judge Rhodes to the docket of Judge Phillip J. Shefferly. The reassignment was due to the fact that Judge Rhodes had recently been designated as the judge to preside over the City of Detroit, Michigan Chapter 9 bankruptcy case.[9] After this adversary proceeding was reassigned to Judge Shefferly, the Court held a status conference on September 23, 2013 to discuss further proceedings and, in particular, the scheduling of both the motion for summary judgment filed by TTOD and Lapeer and the motion for partial summary judgment filed by the Trustee. The Court heard both motions on November 21, 2013, and took them under advisement. The motions are now ready for decision.

## Summary judgment standard

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "'if the evidence

---

[9] Because of the unprecedented size and complexity of that case, the Bankruptcy Court entered Administrative Order No. 13-12 on August 14, 2013 which provided for the reassignment of Judge Rhodes' Chapter 7 cases and related adversary proceedings.

is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Berryman v. Rieger</u>, 150 F.3d 561, 566 (6th Cir. 1998) (quoting <u>Anderson</u>, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." <u>Kalamazoo River Study Group v. Rockwell International Corp.</u>, 171 F.3d 1065, 1068 (6th Cir. 1999) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. <u>Berryman v. Rieger</u>, 150 F.3d at 566 (citing <u>Anderson</u>, 447 U.S. at 256).

<u>**Summary of the parties' positions**</u>

In support of their positions on the two motions, the parties have filed extensive briefs, with over a thousand pages of exhibits. In addition, they have each filed supporting affidavits. TTOD and Lapeer filed an affidavit of Andrew W. Roy, a Comerica Bank employee, an affidavit of Thomas Alongi, a certified public accountant, and an affidavit of Gatt. The Trustee filed an affidavit of Gruits, an affidavit of Janice O'Brien, an employee of Haviland Products Company, an affidavit of Donald A. Wagner, an attorney for the Police and Fire Retirement System of the City of Detroit, and an affidavit of William F. Frey ("Frey"), one of the attorneys representing the Trustee in this adversary proceeding.

In their papers, TTOD and Lapeer make two basic arguments. The first argument is that the Judgment and the Eviction Orders are final, binding and preclusive with respect to all issues concerning the ownership of the Real Property, Equipment, Inventory and Accounts. Pursuant to those pre-petition state court rulings, Dott Acquisition had no interest of any kind or nature in any

-22-

of those assets at the time that the involuntary petition was filed against it. According to TTOD and Lapeer, the Judgment and the Eviction Orders have already finally and fully adjudicated all of the claims made in their complaint, all of the Trustee's defenses, and all of the claims made in the Trustee's counterclaim. TTOD and Lapeer's second argument is that even if all of these issues had not been completely and finally adjudicated prior to the involuntary petition against Dott Acquisition, the Closing Agreement, First Amendment, Second Amendment, Real Property Leases, Equipment Lease, Escrow Agreement, Security Agreements, Settlement Agreement and Assignments (collectively, the "Documents") are clear, unambiguous and completely enforceable according to their terms. According to TTOD and Lapeer, the Documents demonstrate that Dott Acquisition had no property interest in any of the Real Property, Equipment, Inventory or Accounts at the time of the involuntary bankruptcy petition, quite apart from and without regard to the fact that the Circuit Court in the Oakland County Lawsuit and the state courts in the Eviction Proceedings have all ruled in favor of TTOD and against Dott Acquisition with respect to all of these issues.

The Trustee's arguments fall into three basic categories. First, the Trustee argues that Dott Acquisition is the true owner of the Real Property, Equipment, Inventory and Accounts on the date of the involuntary petition against it. Second, even if Dott Acquisition is not the true owner of those assets at the time of the involuntary petition, the bankruptcy estate should be deemed to be the true owner of those assets under various theories, including successor liability, alter ego, and substantive consolidation. Third, the Trustee argues that even if Dott Acquisition is not the true owner of those assets, nor deemed to be the true owner of those assets, the bankruptcy estate is entitled to recover those assets from TTOD and Lapeer under various fraudulent transfer, preferential transfer, turnover of property, conversion and unjust enrichment theories.

**Discussion of complaint**

Count I of complaint - declaratory relief
as to ownership of real estate and equipment

In count I of their complaint, TTOD and Lapeer seek a declaratory ruling that TTOD is the owner of the Real Property and Lapeer is the owner of the Equipment. Just as important, TTOD and Lapeer seek a declaratory ruling that the Real Property and Equipment are not property of the bankruptcy estate, and that the bankruptcy estate has no interest in either the Real Property or the Equipment. In requesting such relief, TTOD and Lapeer first contend that the Judgment and the Eviction Orders have already conclusively determined all issues regarding ownership of the Real Property and Equipment. Next, TTOD and Lapeer contend that even without these prior adjudications, there are still no genuine issues of material fact because Dott Acquisition has never had the right to receive either the deeds to the Real Property or the bill of sale for the Equipment pursuant to the Documents.

The Trustee argues that summary judgment should not be granted because legal title to the Real Property and Equipment "remains in limbo" (Trustee's Br. at 2),[10] somewhere "in a place between TTOD and Debtor – the deeds remain in escrow" (Trustee's Br. at 28), and that "[t]he deeds remain in escrow precisely because the sale still lives" (Trustee's Br. at 32). In making this argument, the Trustee does not deny that the Judgment was entered in the Oakland County Lawsuit or that the Eviction Orders were entered in the Eviction Proceedings. Nor does the Trustee deny that these are all final orders from which no appeal has ever been taken. Further, the Trustee does not deny that Dott Acquisition has never held record title to any of the Real Property and does not deny

---

[10]   The Trustee's Corrected Brief in Opposition to Plaintiffs' Motion for Summary Judgment is ECF No. 131 (hereafter referred to as "Trustee's Br.").

that the deeds to the Real Property and the bill of sale for the Equipment have never been released from escrow pursuant to the Escrow Agreement. Notwithstanding these undisputed facts, the Trustee claims that there are still genuine issues of material fact that prevent a grant of summary judgment on count I of the complaint.

Specifically, the Trustee claims that the Judgment only entitles TTOD to a money judgment against Dott Acquisition. According to the Trustee, neither the Opinion nor the Judgment contain any express finding regarding the ownership of either the Real Property or the Equipment. Because there is no such express finding of ownership, the Trustee contends that she is free to still assert Dott Acquisition's rights to enforce the Documents and to now obtain a release from escrow of the deeds to the Real Property and the bill of sale for the Equipment. Moreover, according to the Trustee, TTOD and Lapeer are themselves precluded by the Opinion and Judgment from even seeking a declaration of ownership of the Real Property and Equipment because they did not specifically seek such declaration in the Oakland County Lawsuit. Even though the Trustee concedes that Dott Acquisition has never paid the purchase price for either the Real Property or Equipment, and even though Dott Acquisition has never held either a deed to any of the Real Property or a bill of sale for the Equipment, the Trustee argues there are genuine issues of fact regarding the Trustee's rights to enforce the Documents and claim ownership of the Real Property and the Equipment that prevent summary judgment in favor of TTOD and Lapeer.

The Court agrees with TTOD and Lapeer. There are no genuine issues of material fact regarding the ownership of either the Real Property or the Equipment.

All of the Trustee's defenses to count I, in which the Trustee asserts that Dott Acquisition is the true owner of the Real Property and Equipment, are based upon the Trustee's premise that the actions of TTOD in dealing with Dott Acquisition were wrongful. Here's the problem with that

premise: all of the claims for wrongful conduct that the Trustee makes in her defenses, counterclaim and lengthy briefs, were previously raised by Dott Acquisition both in the Oakland County Lawsuit and in the Eviction Proceedings. What's more, both the Opinion and the Judgment in the Oakland County Lawsuit expressly rejected all of these claims and dismissed them. The Opinion granted TTOD's motion for summary disposition both as to its claim for breach of contract and as to its request to dismiss all of Dott Acquisition's counterclaims and defenses. The Judgment grants a money judgment in favor of TTOD, expressly states that it dismisses all of Dott Acquisition's counterclaims, and concludes that it "resolves the last pending claim and closes the case." It is undisputed that there has never been an appeal taken from the Judgment. It is a final order.

This Court is required to respect the Judgment.

> The Full Faith and Credit Clause of the U.S. Constitution and its implementing statute, 28 U.S.C. § 1738, require federal courts to give preclusive effect to state-court judgments. Because [federal courts] "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," [the court must] look to Michigan law governing res judicata to determine its applicability.

McCoy v. Michigan, 369 Fed. Appx. 646, 649 (6th Cir. Mar. 12, 2010) (quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)) (other citation omitted).

In Michigan, the doctrine of "[c]ollateral estoppel precludes relitigation of an issue in a [i] subsequent, different cause of action [ii] between the same parties [iii] where the prior proceeding culminated in a valid, final judgment and the issue was [iv] actually litigated, and [v] necessarily determined. People v. Gates, 452 N.W.2d 627, 630 (Mich. 1990) (citations omitted). All of the elements of collateral estoppel are present with respect to the Judgment, such that a Michigan court would apply collateral estoppel to the Judgment.

First, the Oakland County Lawsuit is a lawsuit prior to this adversary proceeding. Second, TTOD and Lapeer were parties to that lawsuit, along with Dott Acquisition. Although Dott Acquisition is not a party to this adversary proceeding, the Trustee is a party to it, as the representative of the bankruptcy estate of Dott Acquisition, under § 323 of the Bankruptcy Code. All of the claims and defenses raised by the Trustee regarding count I are claims and defenses that belonged to Dott Acquisition and became property of this bankruptcy estate under § 541 of the Bankruptcy Code. See Tyler v. DH Capital Management, Inc., 736 F.3d 455, 462-62 (6th Cir. 2013). In prosecuting such claims and defenses, the Trustee stands in the shoes of Dott Acquisition. See Stevenson v. J.C. Bradford & Co. (In re Cannon), 277 F.3d 838, 853 (6th Cir. 2002) ("The trustee stands in the shoes of the debtor and has standing to bring any action that the bankrupt could have brought had he not filed a petition for bankruptcy.") (citations omitted). Because the Trustee is prosecuting the claims and defenses of Dott Acquisition, this adversary proceeding is a proceeding between the same parties who were parties to the Oakland County Lawsuit. Third, the Oakland County Lawsuit culminated in the Opinion and the Judgment. The Judgment is a final judgment. Fourth, the ownership of the Real Property and Equipment was expressly placed in issue in the counterclaim filed by Dott Acquisition in the Oakland County Lawsuit. Paragraph 58 of the counterclaim sought a declaration that TTOD has no right to maintain any action for the return of the Real Property and Equipment. The issue of ownership was actually litigated in the Oakland County Circuit Court. Fifth, the issue of ownership of the Real Property and Equipment was necessarily determined, unfavorably to Dott Acquisition, by the express dismissal of Dott Acquisition's counterclaims in the Opinion and the Judgment.

The Opinion plainly states "that plaintiff's motion for summary disposition is granted as to the plaintiff's claim for breach of contract and *as to the defendant's counterclaims*." (Emphasis

added.)  Consistent with the Opinion, the Judgment also states that the Circuit Court "granted Plaintiff's Motion for Summary Disposition as to the Plaintiff's Breach of Contract Claim and as to Defendant's Counter-Claims . . . ."  The Judgment then states that it "resolves the last pending claim and closes the case."  All of the elements of collateral estoppel are present with respect to the ownership of the Real Property and Equipment.  The principles of collateral estoppel bind the Trustee to the Opinion and the Judgment.

Strangely, although the Trustee agrees with TTOD and Lapeer that the Judgment is entitled to collateral estoppel effect in this adversary proceeding, the Trustee argues that collateral estoppel works in this case to the detriment of TTOD and Lapeer, not the Trustee.  In making this argument, the Trustee contends that TTOD and Lapeer did not seek a declaration of ownership of the Real Property and Equipment in the Oakland County Lawsuit, and that the Opinion and Judgment did not determine this issue.  As a result, the Trustee says that TTOD and Lapeer are now barred from seeking a declaration of ownership.  Further, according to the Trustee, since the Opinion and Judgment do not contain a specific finding that TTOD is the owner of the Real Property and Equipment, then it follows that Dott Acquisition must be the true owner of the Real Property and Equipment.  In advancing this argument, the Trustee asserts that the monetary award of $9.8 million in the Judgment in favor of TTOD and against Dott Acquisition, by implication, means that Dott Acquisition is still entitled to receive the covenant deeds to the Real Property and a bill of sale for the Equipment once it pays the Judgment amount.[11]

---

[11]  Although not argued in her brief, at oral argument the Trustee also suggested that the Documents constitute an unperformed executory contract that the Trustee may assume under § 365 of the Bankruptcy Code by paying the Judgment, and thereby take title to the Real Property, Equipment and other assets of TTOD and Lapeer.  Based upon the Opinion, Judgment and Eviction Orders, the Court categorically rejects the Trustee's suggestion that the Documents are in any respect executory.  However, even if the Documents are executory, it is too late for the

-28-

There are two obvious and insurmountable flaws in the Trustee's argument. First, the Trustee ignores the fact that Dott Acquisition expressly requested in its counterclaim in the Oakland County Lawsuit that the Circuit Court hold that TTOD "has no right to maintain any action of any kind" for return of the Real Property and Equipment. In other words, even if TTOD did not request a declaration of ownership of the Real Property and Equipment in the Oakland County Lawsuit, there is no doubt that Dott Acquisition requested just that. Unfortunately for Dott Acquisition, it did not get the declaration it wanted. Both the Opinion and Judgment expressly rejected its request and instead dismissed *all* of the defenses and counterclaims filed by Dott Acquisition. This dismissal includes Dott Acquisition's assertion that it is the owner of the Real Property and Equipment and its assertion that TTOD is not entitled to a return of the Real Property and Equipment. In short, TTOD did obtain a declaration of ownership of the Real Property and Equipment in the Oakland County Lawsuit when the Circuit Court dismissed Dott Acquisition's defenses and counterclaims. The Trustee utterly fails to deal with the express dismissal language contained both in the Opinion and Judgment.

Second, apart from the Trustee's failure to address the Circuit Court's dismissal of Dott Acquisition's claims and defenses, the Trustee does not point to a single statement contained in either the Opinion or Judgment that even remotely supports the Trustee's contention that Dott Acquisition still has some residual rights to ownership of the Real Property and Equipment. There are no such statements in either the Opinion or the Judgment. The Trustee's interpretation of the Opinion and Judgment is just plain wrong.

---

Trustee to assume executory contracts in this bankruptcy case. Section 365(d)(1) of the Bankruptcy Code only permits a Chapter 7 trustee 60 days after the order for relief to assume an executory contract. In this case, the order for relief was entered on November 23, 2010, so the time to assume executory contracts expired on January 22, 2011.

The application of collateral estoppel principles to the Opinion and Judgment is by itself enough for the Court to find that the Trustee has not raised any genuine issues of material fact with respect to TTOD and Lapeer's request for a declaration regarding ownership of the Real Property and Equipment. But there's more. As noted earlier, Dott Acquisition also raised the identical claims and defenses in the Eviction Proceedings that it raised in the Oakland County Lawsuit with respect to the ownership of the Real Property, and again requested a declaration that TTOD is not the "lawful owner" of the Real Property. The courts in each of the Eviction Proceedings entered an Eviction Order in favor of TTOD and against Dott Acquisition with respect to all of the claims and defenses raised by Dott Acquisition in the Eviction Proceedings. Again, Dott Acquisition did not appeal. The Eviction Orders are now final. They too are entitled to collateral estoppel effect.

The doctrine of collateral estoppel is predicated upon a policy of finality. Dott Acquisition previously claimed that TTOD does not own the Real Property or the Equipment. Dott Acquisition previously claimed that it has some equitable title or other rights to ownership of the Real Property and the Equipment, both in the claims and defenses it raised in the Oakland County Lawsuit and in the claims and defenses it raised in the Eviction Proceedings. Each time, Dott Acquisition lost that argument. Each time, a judgment was entered against it dismissing its claims and defenses. Each time, it did not appeal from the judgment. The Judgment in the Oakland County Lawsuit and the Eviction Orders in the Eviction Proceedings were all final and unappealable orders at the time that this bankruptcy case was filed. The Trustee stands in the shoes of Dott Acquisition with respect to these claims and defenses. The Trustee, just like Dott Acquisition, is bound by the decisions of the Circuit Court and the other state courts in the Eviction Proceedings.

There are no genuine issues of material fact. Collateral estoppel precludes the Trustee from contesting TTOD's and Lapeer's claims of ownership of the Real Property and Equipment. TTOD

and Lapeer are entitled to summary judgment on count I of their complaint. Because the Court concludes that TTOD and Lapeer are entitled to summary judgment based upon principles of collateral estoppel, the Court need not and does not reach any of the other arguments advanced by TTOD and Lapeer with respect to their request for a declaratory judgment on count I.

Count II of complaint - declaratory relief
<u>as to ownership of accounts and inventory</u>

In count II of their complaint, TTOD and Lapeer seek a declaratory ruling that Lapeer is the owner of the Accounts and Inventory. Similar to their request for relief in count I, TTOD and Lapeer also seek in count II a declaratory ruling that the Accounts and Inventory are not property of the bankruptcy estate, and that the bankruptcy estate has no interest in either the Accounts or the Inventory.

In requesting such relief, TTOD and Lapeer acknowledge that the facts are somewhat different with respect to the Accounts than they are with respect to the Inventory. TTOD and Lapeer concede that the Accounts were actually transferred at one point in time to Dott Acquisition pursuant to the Second Amendment. However, they point out that Dott Acquisition later transferred any rights that it had in the Accounts back to Lapeer pursuant to the Settlement Agreement and Assignments. As for the Inventory, TTOD and Lapeer contend that Dott Acquisition never made the payments to TTOD to trigger a release of the bill of sale for the Inventory to Dott Acquisition under the Escrow Agreement. For that reason alone, Dott Acquisition never owned the Inventory, much like the situation with respect to the Real Property and Equipment. According to TTOD, any claims that Dott Acquisition may have had to obtain a bill of sale for the Inventory were wiped out by the Judgment in the Oakland County Lawsuit, in the same way that Dott Acquisition's claims to ownership of the Real Property and Equipment were wiped out by the Judgment. Finally, even if

-31-

Dott Acquisition did at one point in time have some rights to the Inventory, it relinquished those rights in the Settlement Agreement and transferred those rights to Lapeer in the Assignments.

The Trustee argues that TTOD and Lapeer are not entitled to summary judgment on count II. According to the Trustee, TTOD "does not now and never has owned any of the Debtor's accounts." (Trustee's Br. at 37.) Further, the Trustee states that "title to Debtor's inventory has not passed to TTOD by any means." (Id.) The Trustee does not dispute that TTOD holds valid, enforceable and perfected security interests in the Accounts and Inventory pursuant to the Security Agreements. But the Trustee contends that TTOD has not taken legal action to enforce the Security Agreements. As a result, the Security Agreements do not entitle either TTOD or Lapeer to a declaration of ownership of the Accounts and Inventory. According to the Trustee, to the extent that TTOD has somehow gained possession of the Accounts and Inventory, it did so unlawfully. Moreover, TTOD cannot rely upon either the Settlement Agreement or the Assignments to establish ownership of the Accounts and Inventory, because the Settlement Agreement and the Assignments are not enforceable.

The Court agrees with TTOD and Lapeer. There are no genuine issues of material fact. Lapeer owns both the Accounts and the Inventory.

To fully understand the parties' arguments, a brief review of the Documents is helpful. As originally executed, the Closing Agreement provided for Dott Acquisition to purchase both the Accounts and Inventory. TTOD was required to sign a bill of sale for the Accounts and Inventory, and Dott Acquisition was required to sign promissory notes for the payment of the Accounts and Inventory. Dott Acquisition was required to pay the promissory notes within 45 days, at which time TTOD would deliver the bill of sale.

-32-

When Dott Acquisition did not have enough funds to complete all of the transactions as originally described in the Closing Agreement, the parties made some changes, both with respect to the Accounts and the Inventory. The First Amendment removed the Accounts from the assets included in the sale. But the First Amendment did provide Dott Acquisition with the right to purchase TTOD's pre-closing accounts in a subsequent transaction, described by the First Amendment in a new section 3.5. Upon payment of the amount set forth in that new section 3.5, TTOD would assign its rights to its pre-closing accounts to Dott Acquisition. The First Amendment also modified the treatment of Inventory. It provided that Dott Acquisition would not obtain title to the Inventory at that time, but would instead have the Inventory consigned to it until such time as Dott Acquisition made specified payments. The Second Amendment made still more changes regarding the Accounts. Pursuant to the Second Amendment, TTOD sold and assigned the Accounts to Dott Acquisition, except for certain specifically excluded accounts. In sum, although TTOD did assign the Accounts to Dott Acquisition pursuant to the Second Amendment, TTOD never gave Dott Acquisition a bill of sale to the Inventory, but only consigned the Inventory to Dott Acquisition.

In the Oakland County Lawsuit, TTOD alleged that Dott Acquisition failed to pay all of the amounts owing by it to TTOD. The Opinion and Judgment granted TTOD's motion for summary disposition and held that Dott Acquisition "breached its contractual obligation to pay for the business." As explained earlier, the Opinion and Judgment also dismissed all of Dott Acquisition's defenses and counterclaims, including its claims that Dott Acquisition was not in breach of its agreement with TTOD and that "TTOD has no right to maintain an action of any kind against Dott [Acquisition] seeking return of the . . . personal property." (Paragraph 58 of Dott Acquisition's counterclaim in the Oakland County Lawsuit.)

The Opinion and Judgment establish that Dott Acquisition did not make its required payments to TTOD. As a result, the Inventory was never transferred by TTOD to Dott Acquisition, the bill of sale for the Inventory was never released from the Escrow Agreement, and any claims that Dott Acquisition may have had to ownership of the Inventory were disposed of by the Opinion and Judgment in the Oakland County Lawsuit. The same principles of collateral estoppel that entitle TTOD and Lapeer to a declaratory judgment regarding ownership of the Real Property and Equipment similarly entitle them to a declaratory judgment regarding ownership of the Inventory.

However, in contrast to the Inventory, TTOD did transfer the Accounts to Dott Acquisition pursuant to the Second Amendment. TTOD and Lapeer do not dispute this fact. Instead, they contend that they are still entitled to a declaratory judgment regarding ownership of the Accounts. Specifically, they argue that the Settlement Agreement, and the Assignments executed pursuant to the Settlement Agreement, independently transferred to Lapeer any rights that Dott Acquisition may have had in the Accounts.

In paragraph 4 of the Settlement Agreement, Dott Acquisition agreed that it "does hereby surrender and transfer ownership and all of its right, title and interest in and possession of any claim to any right, title and interest in, all of its assets of any kind and nature, to Lapeer." In the first Assignment attached to the Settlement Agreement, Dott Acquisition transferred and assigned to Lapeer "all of its assets of every kind and nature, including but not limited to all accounts, accounts receivable, inventory, raw materials, work in process . . . ." The Settlement Agreement and the First Assignment are clear and unambiguous on their face. All of Dott Acquisition's rights to all of its personal property, including the Accounts, were transferred by Dott Acquisition to Lapeer on September 21, 2010. Absent some legal infirmity, those two documents taken together

unequivocally establish ownership of the Accounts and, for that matter, any other remaining personal property of Dott Acquisition, in Lapeer.

The Trustee does not dispute what the Settlement Agreement and the Assignments say. Rather, the Trustee makes what can best be described as two perfunctory arguments that the Settlement Agreement and the Assignments are not effective. The Trustee's arguments, consisting entirely of two paragraphs, appear on pages 38 and 39 of the Trustee's brief and read as follows:

> The September 20, 2010, Settlement Agreement was not effective, but it leaves no doubt about who owned what as of that date (well within 90 days of the bankruptcy filing date). By this contract, William Gruits was to convey all of [Dott Acquisition]'s assets to [Lapeer] in exchange for a $500,000 credit against the judgment and an additional payment of $200,000.00 to [Dott Acquisition] (neither of which have occurred).

> Mr. Gruits had no legal authority to act on [Dott Acquisition]'s behalf. The July 20 order of the Oakland County Circuit Court barred Mr. Gruits from any management or control of [Dott Acquisition] "until further order of this Court". There was no subsequent order. TTOD would have this Court read an exception into the July 20 order that would enable Mr. Gruits to regain his powers for its benefit at the expense of everyone else.

Logically, it makes the most sense to first consider the Trustee's argument set forth in the second of those two paragraphs: that Gruits did not have the requisite authority even to sign the Settlement Agreement or the Assignments. In considering this argument, the Court notes first that the adversary proceeding record does not contain a "July 20 order" entered by the Circuit Court. However, there were a number of orders entered in the Oakland County Lawsuit, both prior to and after the Opinion and Judgment, that arguably relate to Gruits' authority to act on behalf of Dott Acquisition. For example, the Circuit Court entered an order on February 10, 2010 that granted TTOD's emergency motion to enforce the Interim Agreement. Also, on February 16, 2010, the Circuit Court entered a separate order regarding TTOD's motion to enforce the Interim Agreement. And two days later, on February 18, 2010, the Circuit Court entered yet another order, this time

-35-

appointing Barry L. Howard as a special master for Dott Acquisition. But even a cursory review of all of those orders shows that they were *interim* orders, intended to govern the rights of the parties during the pendency of the Oakland County Lawsuit. None of them were final orders that permanently barred Gruits from acting on behalf of Dott Acquisition. To the extent that any of these orders did restrict Gruits' ability to act on behalf of Dott Acquisition, the Court reads these orders as only placing such restrictions upon Gruits during the pendency of the Oakland County Lawsuit. They do not survive the Judgment. The Judgment makes it clear that it "resolves the last pending claim and closes the case." The Court does not construe these orders, all entered in the Oakland County Lawsuit prior to the Judgment, as depriving Gruits of the authority to enter into the Settlement Agreement and the Assignments on behalf of Dott Acquisition, or as permanent injunctions that in any way impair the enforceability of the Settlement Agreement and the Assignments.

Similarly, if the Court construes the Trustee's reference to a "July 20 order" as a reference to the Post Judgment Orders, the Trustee's argument still fails. The Post Judgment Orders were entered one day after the Judgment. The Post Judgment Orders were entered to prevent Gruits and Dott Acquisition from dissipating assets of Dott Acquisition that would otherwise be available to satisfy the Judgment that the Circuit Court had just entered in favor of TTOD and against Dott Acquisition. The Post Judgment Orders, entered at the request of TTOD, expressly state that they are "issued pursuant to MCL 600.6104 to protect the interests of a Judgment Creditor." Any suggestion that the Post Judgment Orders prevented Gruits from having the requisite authority to sign the Settlement Agreement and Assignments is sophistry. The only plausible reading of the Post Judgment Orders is that they were entered for their stated purpose: "to protect" TTOD by preventing Gruits and Dott Acquisition from transferring assets *away from* TTOD, not to prevent Dott

-36-

Acquisition from transferring assets *to* TTOD, which was the holder of the very Judgment that the Circuit Court had entered the previous day. To accept the Trustee's argument requires the Court to find that the Circuit Court rendered a Judgment in favor of TTOD and against Dott Acquisition for $9.8 million and then, the following day, enjoined Gruits and Dott Acquisition from making any payments or transferring any assets to TTOD to satisfy that Judgment. The Court declines to read the Post Judgment Orders in such a contorted and illogical manner.

That leaves one last possibility. Perhaps the Trustee's reference to a "July 20 order" was intended to mean a September 23, 2010 Opinion and Order ("September 23, 2010 Order") entered in the Oakland County Lawsuit. That order dealt with a motion filed by Schafer and Weiner, PLLC to resolve what it believed to be conflicting instructions concerning the return of the $90,000 retainer that Gruits had paid to it. One of Schafer and Weiner, PLLC's arguments was that the Interim Agreement was not binding on Gruits and, therefore, Gruits did have actual authority to cause Dott Acquisition to transfer the funds to Schafer and Weiner, PLLC. The Circuit Court disagreed, stating that "[t]he Interim Agreement was a contract made between TTOD [ ], Dott Acquisition, William Gruits, and Scovey, LLC," and that it was "not an order of the Court."[12] Further, the Interim Agreement was binding on the parties, and "Gruits was without corporate authority to retain Shafer [sic] and Weiner, PLLC, to represent Dott [Acquisition], and he was without corporate authority to transfer the money to Shafer [sic] and Weiner PLLC."

Putting the best light on the Trustee's argument, it appears that the Trustee may be arguing that the Circuit Court ruled in the September 23, 2010 Order that Gruits had no legal authority to act on behalf of Dott Acquisition, because the contractual bar on Gruits' authority that was contained

---

[12] Scovey, LLC was a limited liability company owned by Gruits, that was also a member of Dott Acquisition.

-37-

in the Interim Agreement was still in effect. Following this logic, the Trustee posits that if Gruits had no contractual authority to act on behalf of Dott Acquisition, then Gruits must not have had authority to sign the Settlement Agreement on behalf of Dott Acquisition. But this argument too falls apart upon close inspection.

The Interim Agreement was made by TTOD, Dott Acquisition and Gruits, acting both individually and on behalf of Scovey, LLC, a member of Dott Acquisition. In paragraph 9 of the Interim Agreement, Gruits represented and warranted "that he [had] the full and absolute authority to execute this Agreement on behalf of and bind Dott [Acquisition] and its constituent, Scovey, LLC . . . ." Gruits then signed the Interim Agreement as the manager of Dott Acquisition and individually. Like the Interim Agreement, the Settlement Agreement was also made by TTOD, Dott Acquisition and Gruits. In paragraph 13 of the Settlement Agreement, Gruits warranted that he had the power and authority to enter into the Settlement Agreement on behalf of Dott Acquisition, and to make the Assignments attached to the Settlement Agreement. Specifically, he warranted in paragraph 13 of the Settlement Agreement that all of the members and managers identified on exhibit B to the Settlement Agreement constitute the managers and members of Dott Acquisition, and that "the members and managers of [Dott Acquisition] have duly authorized and consented to the execution of this Agreement." Exhibit B then lists the members of Dott Acquisition as including Scovey, LLC. In other words, the parties to the Interim Agreement are the very same parties that made the Settlement Agreement. The Settlement Agreement expressly dealt with any existing agreements among those same parties by the integration clause contained in paragraph 18 of the Settlement Agreement. That integration clause expressly stated that the Settlement Agreement "constitute[s] the entire understanding of the Parties in connection with the subject matter of this Agreement and supercedes all prior proposals, negotiations, representations, understandings,

commitments, and agreements, whether oral or written with regard to the subject matter and provisions of this Agreement."

In the Court's view, the Settlement Agreement amended and superceded the Interim Agreement in all respects. The Settlement Agreement and Interim Agreement both dealt with the management of Dott Acquisition. The parties to the Settlement Agreement were identical to the parties to the Interim Agreement. The only plausible construction of the Settlement Agreement is that it terminated the contractual provisions in the Interim Agreement, and that the Settlement Agreement now controlled. Those contractual provisions in the Interim Agreement that limited or impaired Gruits' right to act for Dott Acquisition were modified and superceded by the Settlement Agreement. Moreover, any suggestion by the Trustee that the September 23, 2010 Order holds otherwise, based upon its recitation that the Interim Agreement remained in effect, is without merit. At the time that the Settlement Agreement was entered into, Schafer and Weiner, PLLC's motion was under advisement by the Circuit Court. There is nothing in either the order itself or the record before this Court to indicate that any party made the Circuit Court aware of the Settlement Agreement before it issued the September 23, 2010 Order that TTOD, Dott Acquisition and Gruits, both individually and on behalf of Scovey, LLC, had made a new agreement just two days earlier that amended and superceded all of their prior agreements: the Settlement Agreement.

It is true that there were many orders entered by the Circuit Court. The Trustee's analysis of what those orders either authorized Gruits to do or not do breaks down when the orders are considered in sequence. Further, it is worth noting that Gruits himself apparently read the orders in the same way that this Court reads them. After all, Gruits expressly represented in paragraph 13 of the Settlement Agreement that he had the power and authority to enter into the Settlement Agreement on behalf of Dott Acquisition and to make the Assignments attached to it. Gruits

-39-

expressly represented and warranted in paragraph 13 that all the members and managers of Dott Acquisition duly authorized and consented to his execution of the Settlement Agreement and Assignments. The fact that the September 23, 2010 Order was issued two days later does not mean that Gruits did not have the authority to enter into the Settlement Agreement in these circumstances where all of the parties that made the Interim Agreement were also parties to the Settlement Agreement. The Court rejects the Trustee's argument that the Post Judgment Orders, the September 23, 2010 Order, or any interim order in the Oakland County Lawsuit, barred Gruits from entering into the Settlement Agreement and the Assignments on behalf of Dott Acquisition.

The Trustee's second attack on the Settlement Agreement and the Assignments, contained in the first of the two quoted paragraphs from pages 38 and 39 of the Trustee's brief, is somewhat confusing, but no more persuasive. In paragraph 80 of the Trustee's counterclaim, the Trustee alleges that the "Settlement Agreement is also void for a lack of consideration or a failure of consideration." On page 4 of her brief, the Trustee also makes the conclusory statement that "[t]he Settlement Agreement was never consummated." The Trustee offered no evidence in support of this statement, failing to even identify what consideration failed or was lacking. A search of the record for any support reveals only paragraph 59 of Gruits' affidavit, which states that "the consideration promised by TTOD . . . , which included but is not limited to a payment of $200,000, has never been provided." But the allegations in the Trustee's counterclaim and brief, together with Gruits' affidavit, do not demonstrate the existence of a genuine issue of material fact regarding the enforceability of the Settlement Agreement and the Assignments.

While Gruits' affidavit may establish that the $200,000 payment under the Settlement Agreement was not made by TTOD, there are no facts in the record that demonstrate that TTOD was ever obligated to make the $200,000 payment. Paragraph 11 of the Settlement Agreement expressly

-40-

states that TTOD must deposit the $200,000 with an escrow agent, to be disbursed to Dott Acquisition, only upon satisfaction of specifically stated conditions precedent. The very first condition precedent in paragraph 12 is that Dott Acquisition "shall not voluntarily file, or suffer the filing of, any petition for bankruptcy court relief . . . within 110 days from the execution of this [Settlement] Agreement." This condition precedent was indisputably not met. The involuntary petition against Dott Acquisition was filed on October 21, 2010, just 30 days after the execution of the Settlement Agreement. Dott Acquisition did not file an answer or otherwise oppose the involuntary petition. On November 23, 2010, only 65 days after the execution of the Settlement Agreement, the Court entered an order for relief granting the uncontested involuntary petition. Regardless of whether TTOD made the $200,000 deposit, there is nothing in the record to show that the conditions precedent for the payment of the $200,000 deposit were ever met.

Even if the Trustee could somehow show an issue of fact as to whether Dott Acquisition was entitled to receive a $200,000 deposit under the Settlement Agreement, it does not follow that the Settlement Agreement was not "consummated" or that it is "void for lack of consideration or a failure of consideration." First, there is a difference between a *lack* of consideration and a *failure* of consideration. "[A] lack of consideration . . . results in the failure to form a contract[.]" Quick Capital of L.I. Corp. v. Bavelis (In re Bavelis), No. 13-8015, 2013 WL 6672988, at *14 (B.A.P. 6th Cir. Dec. 19, 2013) (quotation marks and citation omitted). On the other hand, in the case of a failure of consideration, a contract is made, "but because of some supervening cause, the promised performance fails." Id. (citation omitted). The Trustee does not allege a lack of consideration either in her counterclaim or her brief. Nor does the Trustee provide any evidence that TTOD failed to provide Dott Acquisition with the other "good and valuable consideration" acknowledged in the Settlement Agreement, such as the $500,000 credit against the Judgment. Putting the Trustee's

-41-

argument in the best light, the most that the Trustee argues is that there was a partial failure of consideration, consisting of TTOD's failure to pay the deposit. But even if the condition precedent to TTOD's obligation to release the $200,000 from escrow had been fulfilled, and TTOD had failed to release the deposit, that partial failure of consideration does not equate to a lack of consideration, and does not "void" the Settlement Agreement, or render it a nullity, as claimed by the Trustee.

There is nothing in the record to create a genuine issue of material fact regarding Gruits' authority to sign the Settlement Agreement and the Assignments on behalf of Dott Acquisition. Nor is there anything in the record to create a genuine issue of fact supporting the Trustee's claim that the Settlement Agreement is void for a lack or failure of consideration. The Settlement Agreement and the Assignments are binding upon Dott Acquisition.[13]

Dott Acquisition never owned the Inventory. And any claims it had to the Inventory were dismissed by the Judgment. But apart from the Judgment, any remaining rights that Dott Acquisition may have had in either the Accounts or Inventory were unquestionably transferred by Dott Acquisition to Lapeer pursuant to the Settlement Agreement and Assignments. When the involuntary bankruptcy petition was filed against Dott Acquisition, Lapeer, not the bankruptcy estate, owned the Accounts and Inventory. TTOD and Lapeer are entitled to summary judgment with respect to count II.[14]

_____

[13] At oral argument, the Trustee also claimed, for the first time, that the Settlement Agreement and Assignments are not enforceable because they are "adhesion contracts." The Trustee offered no support for this statement, and the Court does not view this belated claim as raising a genuine issue of fact regarding the enforceability of the Settlement Agreement and Assignments.

[14] TTOD and Lapeer also argue that there is an additional basis to apply collateral estoppel principles to defeat the Trustee's defenses to count II. Specifically, while the bankruptcy case was still on Judge Rhodes docket, Judge Rhodes had dismissed two other adversary proceedings brought by the Trustee: adversary proceeding numbers 12-6192 and

In count III of their complaint, TTOD and Lapeer seek a declaratory ruling that TTOD holds a valid, enforceable and properly perfected security interest in the Accounts and Inventory senior to the interests of Dott Acquisition and the Trustee. In a sense, the relief that TTOD and Lapeer seek in count III is alternative relief to the relief they seek in count II, which seeks a declaration of ownership. For the reasons explained above, the Court finds that Lapeer is the owner of the Accounts and Inventory, and the bankruptcy estate is not the owner of either of them. But the request of TTOD and Lapeer in count III for a declaration that TTOD holds a security interest in the Accounts and Inventory does not ask for relief that is inconsistent with the Court's finding of ownership. Further, even apart from the ownership issue, the resolution of TTOD's request for declaratory relief in count III is important, as will be seen later in the opinion, for adjudicating some of the claims made by the Trustee in her counterclaim.

The basis for TTOD's request for declaratory relief in count III is straightforward. TTOD relies upon the Security Agreements made by Dott Acquisition on January 20, 2009, together with the UCC-1 financing statement that it filed with the Michigan Department of State on October 7, 2008 covering Dott Acquisition's "inventory," and the amended UCC-1 financing statement that it

---

12-6193. In each of these adversary proceedings, the Trustee alleged that TTOD wrongfully made payments to third parties out of Dott Acquisition's property (i.e., the Accounts and Inventory). Both adversary proceedings are based on the same premise that the Trustee articulates in this adversary proceeding: that Dott Acquisition is the true owner of TTOD and Lapeer's assets. According to TTOD and Lapeer, Judge Rhodes' dismissal of these adversary proceedings is an adjudication of the very same issues that the Trustee raises in defense of count II of the complaint, and collaterally estops the Trustee from raising those defenses. The Court need not reach this argument, since the Court already concludes that summary judgment for TTOD and Lapeer on count II is warranted for the reasons explained.

filed with the Michigan Department of State on October 17, 2008 that added "accounts" to the description of the collateral covered.

In opposing TTOD's request for summary judgment on count III, the Trustee does not dispute that Dott Acquisition executed the Security Agreements, and does not dispute that the UCC-1 financing statements were properly filed with the Michigan Department of State. After conceding that TTOD holds security interests in the Accounts and Inventory, the Trustee points out that there are other creditors that also hold security interests in the Accounts and Inventory. On page 40 of her brief, the Trustee notes that another creditor of Dott Acquisition, Bibby Financial Services (Midwest) Inc. ("Midwest") holds a security interest in some or all of the Accounts and Inventory, and that TTOD signed a subordination agreement with Midwest. The Trustee also explains that there is pending litigation between Midwest and TTOD regarding disputes over the rights they may have relative to one another in the Accounts and Inventory.

Even if the Court accepts as true all of the Trustee's arguments concerning the rights of third parties in the Accounts and Inventory, that does not create a genuine issue of material fact with respect to any of the relief sought by TTOD in count III of the complaint. The Security Agreements and UCC-1 financing statements demonstrate a properly perfected security interest in Dott Acquisition's interest in the Accounts and Inventory. Further, Dott Acquisition expressly acknowledged the priority, validity and enforceability of TTOD's security interests in the Accounts and Inventory in recital C of the Settlement Agreement. The Trustee has not raised any genuine issue of material fact that prevents the Court from granting summary judgment to TTOD with respect to count III of the complaint.

**Discussion of counterclaim**

**Count I of counterclaim - equitable subordination**

In count I of the Trustee's counterclaim, the Trustee requests that any claims of TTOD and Lapeer in this bankruptcy case be equitably subordinated to the claims of other creditors. The thrust of this claim is that TTOD wrongfully and improperly seized the Real Property, Equipment, Inventory and Accounts of Dott Acquisition, all to the detriment of Dott Acquisition's creditors.

The doctrine of equitable subordination is based upon principles of equity, and allows a court to subordinate the claim of one creditor to the claims of other creditors. The doctrine is codified in § 510(c)(1) of the Bankruptcy Code. The Sixth Circuit Court of Appeals in <u>Bayer Corp. v. MascoTech, Inc.</u> (<u>In re AutoStyle Plastics Inc.</u>), 269 F.3d 726, 744 (6th Cir. 2001), adopted a three part test for determining whether equitable subordination of a claim is appropriate:

> (1) the claimant must have engaged in some type of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

The Trustee argues that there are genuine issues of material fact that prevent the Court from granting summary judgment to TTOD. Specifically, the Trustee points to paragraphs 72 through 92 of her counterclaim as establishing the factual basis for equitable subordination in this case.

The difficulty with the Trustee's position is that all of the Trustee's allegations of inequitable conduct are built upon the fundamental premise that Dott Acquisition is the true owner of the Real Property, Equipment, Inventory and Accounts. As explained earlier, the Circuit Court rejected any claims by Dott Acquisition that it owned the Real Property. So did each of the courts in the Eviction Proceedings. The Circuit Court also rejected Dott Acquisition's claims that it owned the Equipment. In asserting that TTOD somehow "improperly seized" the Real Property and the Equipment, the

-45-

Trustee seems blind to the fact that both the Circuit Court and each of the courts in the Eviction Proceedings have already adjudicated that Dott Acquisition has no rights to the Real Property and the Equipment. Its claims have all been extinguished.

The Trustee's arguments fare no better with respect to the Accounts and Inventory. It is undisputed that Dott Acquisition signed the Settlement Agreement and the Assignment that surrendered and transferred to Lapeer any and all rights that Dott Acquisition ever had to the Accounts and Inventory. The Trustee tries to sidestep the plain and unambiguous statements in the Settlement Agreement and the Assignments by arguing that they are not effective or binding upon Dott Acquisition either because Gruits did not have the authority to sign them on behalf of Dott Acquisition or because of a lack or failure of consideration. For the same reasons articulated in the discussion above regarding counts II and III of TTOD's and Lapeer's complaint, the Court rejects this argument.

There is no genuine issue of material fact regarding how TTOD and Lapeer came into possession of the Real Property, Equipment, Inventory and Accounts. TTOD won four separate lawsuits against Dott Acquisition, and Dott Acquisition did not appeal from final orders entered in each of them. When they were all over, Dott Acquisition signed a Settlement Agreement acknowledging that it had not appealed those final orders and surrendering any rights it had to any of those assets. And then Dott Acquisition transferred all of its remaining property to Lapeer by the Settlement Agreement and Assignments. There was nothing improper about TTOD regaining possession and control over the Real Property, Equipment, Inventory and Accounts. TTOD and Lapeer unquestionably owned all of those assets.

Nor do any of the affidavits filed by the Trustee create a genuine issue of material fact regarding any other inequitable conduct by TTOD. Frey's affidavit only addresses discovery related

-46-

issues, not TTOD's conduct. Janice O'Brien's affidavit describes a claim against Dott Acquisition held by Haviland Products Company, but does not describe any inequitable conduct by TTOD. Donald A. Wagner, the attorney for the Police and Fire Retirement System of the City of Detroit, attests in his affidavit only to the accuracy of documents in his file. It does not even mention TTOD. That just leaves Gruits' affidavit.

Most of Gruits' affidavit consists of a recapitulation of the history of dealings and litigation between TTOD and Dott Acquisition. Gruits' affidavit leaves the firm impression that he is unhappy with the outcome. But Gruits' affidavit does not describe any conduct by TTOD that could conceivably support a finding of inequitable conduct for purposes of equitable subordination. The only paragraphs in Gruits' affidavit that even remotely suggest any inequitable conduct by TTOD are paragraphs 58 and 59. Paragraph 58 alleges in conclusory terms that TTOD "induced" Gruits to enter into the Settlement Agreement. But Gruits does not explain how he was induced to enter into the Settlement Agreement, nor does his affidavit identify or even allege any improper conduct by TTOD that induced him to enter into the Settlement Agreement. In paragraph 59, Gruits says again in conclusory terms that the consideration promised by TTOD in the Settlement Agreement "has never been provided," without explaining what he is referring to. Gruits' affidavit does not create any genuine issues of material fact regarding any improper or inequitable conduct by TTOD.

Because there is no inequitable conduct that supports the Trustee's request for equitable subordination, the Court need not inquire into the other elements of equitable subordination. TTOD and Lapeer are entitled to summary judgment on count I of the Trustee's counterclaim.

<u>Count II of counterclaim - successor liability</u>

In count II of her counterclaim, the Trustee requests a judgment against TTOD and Lapeer based upon successor liability. In the single paragraph of count II, the Trustee alleges that TTOD

-47-

and Lapeer are "successors of the Debtor" based on their "substantial identity with Debtor, control of the Debtor and continuity of a single business enterprise," and their "misconduct and disregard of the rights of Debtor and claims of Debtor's employees and other creditors." In their motion for summary judgment, TTOD and Lapeer argue that the Trustee's successor liability count fails for two reasons. First, it is based upon the Trustee's incorrect assertion that there was an "improper seizure." Second, in any event, there is no common ownership between TTOD and Lapeer, on the one hand, and Dott Acquisition, on the other hand.

"Whether a particular cause of action is available to the debtor. . . is determined by state law." Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Products Co.), 102 F.3d 223, 225 (6th Cir. 1996) (citing Butner v. United States, 440 U.S. 48 (1979)). "Michigan follows the traditional rule of successor liability, under which the successor in a merger ordinarily assumes all of its predecessor's liabilities, but a purchaser of assets for cash does not." C.T. Charleton & Associates, Inc. v. Thule, Inc., No. 12-2619, 2013 WL 5433434 (6th Cir. Sept. 30, 2013) (citing Foster v. Cone-Blanchard Machinery Co.), 597 N.W.2d 506, 509 (Mich. 1999)). In Michigan, the general rule with respect to successor liability pertaining to asset purchases "is subject to five narrow exceptions: 1) express or implied assumption of liability; 2) de facto consolidation or merger; 3) fraud; 4) transfer lacking good faith or consideration; and 5) 'mere continuation or reincarnation of the old corporation.'" Id. (quoting Foster, 597 N.W.2d at 509-10).

In her brief, the Trustee states that her claim for successor liability is based upon the exceptions for lack of good faith or consideration, and the mere continuation or reincarnation of the old corporation. To support her argument, the Trustee again relies upon her assertion that TTOD "improperly seized" Dott Acquisition's assets. In addition, the Trustee argues that during the

-48-

Oakland County Lawsuit, TTOD "improperly took control" of Dott Acquisition "through its control of Larry Gatt."

First, as explained earlier, there was no improper seizure. The Opinion and Judgment in the Oakland County Lawsuit rejected every claim and defense raised by Dott Acquisition. The Eviction Orders entered in the Eviction Proceedings did so too. Those final, unappealed judgments all establish that TTOD, not Dott Acquisition, owned the Real Property, Equipment and Inventory. The acts taken by TTOD to obtain possession of those assets after the Judgment and the Eviction Orders were entered, were not improper or unlawful in any way. Even Dott Acquisition expressly acknowledged in the Settlement Agreement that there was nothing improper in TTOD's conduct. All of the property seized, both real and personal, was owned by TTOD, not Dott Acquisition, except for the Accounts, which Dott Acquisition transferred to Lapeer pursuant to the Settlement Agreement and Assignments. The Trustee has not produced a shred of evidence that TTOD or Lapeer took any property that TTOD did not own. The Trustee's bald, unsupported allegation of "improper seizure" does not create a genuine issue of material fact with respect to her claim for successor liability.

Second, the Trustee's argument misses a very basic point regarding the doctrine of successor liability. There is no common ownership between TTOD and Lapeer, on the one hand, and Dott Acquisition, on the other hand. TTOD and Lapeer are owned by Kojaian and his father. Dott Acquisition is owned by Gruits. "Under the 'mere continuity' exception, courts will look to the totality of the circumstances but only if the 'indispensable' requirements of common ownership and the transfer of substantially all assets are met first." C.T. Charleton & Associates, 2013 WL 5433434 at *5 (citing Stramaglia v. United States, 377 Fed. Appx. 472, 475 (6th Cir. 2010)).

-49-

Third, the Trustee's "mere continuation" argument, based on Gatt's role, is a little more complicated, but no more helpful to the Trustee in showing that TTOD and Lapeer are successors of Dott Acquisition. The Interim Agreement brought Gatt in to run the business operations of Dott Acquisition on an interim basis during the Oakland County Lawsuit. The Interim Agreement stated that Gatt could not be removed as the CEO and CFO of Dott Acquisition without TTOD's consent, but that's all. There is nothing in the Interim Agreement that either required or permitted TTOD to "control" Dott Acquisition through Gatt. Gruits' affidavit states in a generalized way that Gatt had control of Dott Acquisition's business under the Interim Agreement "for TTOD," but does not offer any factual support for this allegation. The most that Gruits offers is in paragraph 47 of his affidavit, where he says that "Gatt refused to take any direction from me and took all direction from C. Michael Kojaian, the president and 50% shareholder of TTOD." But Gruits' affidavit does not identify a single communication by Kojaian to Gatt, whether in writing or verbal, regarding the operation of Dott Acquisition. Gruits' affidavit does not state that he ever saw or heard Kojaian tell Gatt anything to do in connection with the operation of Dott Acquisition. Gruits' affidavit does not state that he ever saw any piece of paper or heard any communication from anyone in which Kojaian told Gatt how to run Dott Acquisition.

On the other hand, Gatt's affidavit directly and specifically tackles this issue. In paragraph 9 of his affidavit, Gatt states that he "held no position with TTOD," while he acted as the CEO and CFO of Dott Acquisition under the Interim Agreement. In paragraph 11, Gatt states that during the time that he acted as the CEO and CFO of Dott Acquisition pursuant to the Interim Agreement, he did periodically update TTOD "with regard to the general status" of Dott Acquisition's business. But then he explicitly states that he "was not in regular or routine contact with representatives of TTOD with regard to the day to day business operations of [Dott Acquisition] and *did not take*

-50-

*direction from representatives of TTOD* with regard to the business operations of [Dott Acquisition]." (Emphasis added.) Gatt's affidavit is uncontroverted.[15] Neither Gruits' affidavit nor any other affidavits or other materials relied upon by the Trustee in any way contradict Gatt's statement that he did not take direction from TTOD during the time that he acted as CEO and CFO under the Interim Agreement.

The Trustee places great stock in an email sent by Kojaian to Andrew W. Roy, at Comerica Bank, on December 16, 2009. In that email, which was sent immediately after the Interim Agreement was entered, Kojaian stated that the Interim Agreement "effectively gives us control of the assets and control of the operations with Larry Gatt without taking over the liabilities that Gruits has created." Obviously, Kojaian viewed the Interim Agreement favorably. TTOD entered the Interim Agreement in lieu of going forward with its motion for the appointment of a receiver. Kojaian apparently also believed that the Interim Agreement would enable TTOD to exercise a measure of control. But Kojaian's subjective belief does not demonstrate that TTOD did in fact exercise any control.

The Trustee has not come forward with even a single piece of evidence to show that TTOD *acted* to control Dott Acquisition through Gatt or interfered with Gatt's responsibilities as CEO and CFO for Dott Acquisition. Even Gruits, in paragraph 59 of his affidavit, does not point to a single instance of action by TTOD directing Gatt how to perform his responsibilities as CEO and CFO of Dott Acquisition. More importantly, Gatt's affidavit, which expressly states that he did not take any direction from TTOD in fulfilling his responsibilities as CEO and CFO of Dott Acquisition, is not

---

[15]  The Trustee also argues that the Court should not grant summary judgment because discovery has not yet closed. Among other things, the Trustee states that she has not yet taken Gatt's deposition, and thus has not had an opportunity to test his knowledge and veracity. The Court will specifically address this argument later in this opinion.

controverted by anything in the record. The nonmoving party "'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). The Trustee's conclusory assertion that TTOD and Lapeer are somehow successors to Dott Acquisition, as some type of continuation or reincarnation of Dott Acquisition, is just not supported by any evidence in the record.

The Trustee has not raised any genuine issues of material fact regarding her count II. TTOD and Lapeer are entitled to summary judgment on count II of the Trustee's counterclaim.

Count III of counterclaim - alter ego

In count III of her counterclaim, the Trustee requests a finding that TTOD and Lapeer are "liable for all allowable claims against this estate including administrative expense and the claims of employees and other creditors . . . ." There is only one paragraph in count III, and it alleges that TTOD and Lapeer "are *alter egos* of the Debtor whose separate corporate identity should be ignored because [TTOD and Lapeer] used Debtor to commit a fraud or wrong as a result of which Debtor and its creditors suffered an unjust or injury."

TTOD and Lapeer argue that they are entitled to summary judgment on count III for two basic reasons. First, they argue that the Trustee has no standing to pursue an alter ego claim against them. Second, they argue that there are in any event no genuine issues of material fact, and that the undisputed facts do not support a cause of action for alter ego.

The Sixth Circuit Court of Appeals has generally explained an alter ego claim as follows:

[A]n alter ego claim is not by itself a cause of action. Rather, it is a doctrine which fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business, and such liability arises from fraud or injustice perpetrated not on the corporation but on third persons

-52-

dealing with the corporation. The corporate form may be disregarded only where equity requires the action to assist a third party.

Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Products Co.), 102 F.3d 223, 226 (6th Cir. 1996) (internal quotation marks and citation omitted).

Because this counterclaim is based on a state law cause of action, the Court looks to Michigan law.

A court may find that one entity is the alter ego of another and pierce the corporate veil upon proof of three elements: first, the corporate entity must be a mere instrumentality of another; second, the corporate entity must be used to commit a fraud or wrong; and third, there must have been an unjust loss or injury to the plaintiff.

Id. (citing Nogueras v. Maisel & Assoc. of Michigan, 369 N.W.2d 492, 498 (Mich. Ct. App. 1985)).

In the section of her brief addressing the substance of her alter ego claim, the Trustee argues that TTOD used Dott Acquisition as a "mere instrumentality" during the time that Gatt served as the CEO and CFO of Dott Acquisition. For proof, the Trustee again relies upon the email sent by Kojaian to Andrew W. Roy at Comerica Bank. Finally, the Trustee argues that TTOD and Lapeer have "unjustly injured" the creditors of Dott Acquisition by seizing the assets of Dott Acquisition.

The first issue regarding the Trustee's alter ego claim concerns whether the Trustee has the standing to bring the claim at all. The Trustee undoubtedly has standing to bring a cause of action that is property of the bankruptcy estate, as the representative of the bankruptcy estate. "Section 704 of the Bankruptcy Code requires a Chapter 7 trustee to 'collect and reduce to money the *property of the estate* for which the trustee serves . . . .'" RCS Engineered Products, 102 F.3d at 225 (quoting 11 U.S.C. § 704(1)) (emphasis in original). Causes of action are included in property of the estate and "§ 704(1) grants the bankruptcy trustee the authority to pursue such causes of action." Id. (citation omitted) (finding that a trustee did not have standing to bring an alter ego claim against the

-53-

debtor's parent company because such a claim was not recognized under Michigan law) (citing Butner v. United States, 440 U.S. 48 (1979)).

The Trustee apparently recognizes that she cannot bring an alter ego claim on behalf of Dott Acquisition, but stresses that she instead is bringing it on behalf of all of Dott Acquisition's creditors. On page 46 of her brief, the Trustee argues as follows:

> The claims that the Trustee brings are on behalf of the Debtor's creditors, *not* on behalf of the Debtor. That is, to the extent that the Trustee is bringing claims that may impose liability on TTOD as . . . an alter ego of the Debtor, or on [Lapeer] as an alter ego of TTOD . . . those claims are claims of the creditors of the Debtor . . . .

The Trustee cites no authority in the Bankruptcy Code that authorizes her to bring any claims on behalf of non-debtor third parties. The only authority that the Trustee offers is a citation to CH Holding Company, et al. v. Miller Parking Company, 903 F. Supp. 2d 551 (E.D. Mich. 2012). In that case, the plaintiff, Alan Ackerman, held a $3 million state court judgment against Miller Parking Company. Id. at 554. After the judgment was entered, Miller Parking Company distributed $7 million to its shareholders. Later, Miller Parking Company filed for bankruptcy. Ackerman brought suit against the shareholders who received the transfers from Miller Parking Company alleging that the transfers were fraudulent and that the shareholders who received the transfers were alter egos of Miller Parking Company. Meanwhile, the bankruptcy trustee for Miller Parking Company also sued those same shareholders to recover the very same payments. One of the shareholders sued by Ackerman removed Ackerman's lawsuit to the federal district court. Ackerman filed a motion to remand back to the state court. The federal district court denied Ackerman's motion. Noting that Ackerman was seeking to recover the very same payments from the shareholders that the bankruptcy trustee was seeking to recover, the federal district court concluded that Ackerman's lawsuit was "related to" Miller Parking Company's bankruptcy case.

Id. at 555. The federal district court held that if Ackerman were to succeed in his lawsuit against the shareholders, then he would in substance be taking control over assets that would otherwise be available to the bankruptcy estate, which would therefore interfere with the orderly liquidation of Miller Parking Company's assets for the benefit of all of its creditors. Id. at 555-56. The federal district court held that only the bankruptcy trustee could recover the payments made by Miller Parking Company to the shareholders for the benefit of all of Miller Parking Company's creditors and that Ackerman could not separately pursue those same payments. Id. at 556. In dicta, the CH Holding court stated that "[n]o authority prevents the trustee, standing in the shoes of a debtor company, from seeking to pierce the veil of a completely separate corporation and recover for the benefit of the debtor's estate and its creditors assets that the trustee maintains were given away by the debtor and then distributed to the other company's shareholders." Id. at 557.

The CH Holding Company case ultimately does not help the Trustee. First, its holding is narrow: Ackerman's claims were related to the bankruptcy estate because the bankruptcy trustee was seeking to recover the same payments that Ackerman was seeking to recover. As a result, all that the court did was deny a motion for remand. Second, there was no alter ego claim by a bankruptcy trustee that was being prosecuted in the CH Holding Company case. The opinion's generalized discussion of a bankruptcy trustee's authority to pierce the veil of a separate corporation was dicta. Third, RCS Engineered Products is binding Sixth Circuit precedent. That case held that a bankruptcy trustee did not have standing to assert a claim for alter ego because such claim was not property of the bankruptcy estate under § 541 of the Bankruptcy Code. Under applicable Michigan law, a corporation may not seek to pierce its own corporate veil and disregard its own separate corporate identity. 102 F.3d at 225-26 (citations omitted). Therefore, property of the estate under § 541 does not include a claim by a debtor to pierce its own corporate veil. As such, the bankruptcy

trustee does not have standing to bring such claim. As explained in <u>RCS Engineered Products</u>, "courts apply the alter ego theory and disregard a company's separate corporate identity for the benefit of third parties, *e.g.*, creditors of the corporation . . . ." <u>Id.</u> at 226. <u>RCS Engineered Products</u> makes it clear that "[t]he general rule is that the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders." <u>Id.</u> (citations omitted).

If creditors of Dott Acquisition wish to bring a cause of action to pierce the corporate veil of Dott Acquisition, and seek a finding of alter ego, they are free to do so under applicable Michigan law. But Dott Acquisition may not bring a claim to pierce its own corporate veil and seek a finding of alter ego. As a result, the Trustee does not have such a claim as property of the estate in this case. The Trustee has not provided any authority that would permit the Trustee to bring an alter ego claim on behalf of creditors who are themselves not debtors and whose causes of action against TTOD and Lapeer are not property of this bankruptcy estate. The Court agrees with TTOD and Lapeer: the Trustee does not have standing to bring an alter ego claim.

But even if the Trustee's alter ego claim is considered on the merits, TTOD and Lapeer are still entitled to summary judgment. There is only a bare allegation that Dott Acquisition was a mere instrumentality of TTOD and Lapeer. The affidavits filed by the Trustee provide no facts to support this allegation. Further, the only fraud or wrong alleged to have been perpetrated by TTOD and Lapeer is TTOD's improper seizure of Dott Acquisition's assets, the transfer of those assets to Lapeer, and Lapeer continuing a business that rightfully belongs to Dott Acquisition. Once again, as discussed above, there was no improper seizure of Dott Acquisition's assets by TODD or Lapeer. The Trustee does not have standing to bring an alter ego claim, but even if the Trustee did have such standing, there are no genuine issues of material fact, and TTOD and Lapeer are entitled to summary judgment with respect to count III of the Trustee's counterclaim.

-56-

<u>Count IV of counterclaim - substantive consolidation</u>

In count IV of the Trustee's counterclaim, the Trustee requests an order substantively consolidating TTOD and Lapeer with Dott Acquisition. Paragraph 100 of the Trustee's counterclaim is the sole paragraph addressing substantive consolidation. It alleges that TTOD and Lapeer should be substantively consolidated with Dott Acquisition because "they are substantially identical and because consolidation is necessary to avoid harm to the Debtor and its creditors whose claims should in fairness attach to [TTOD and Lapeer] in the extraordinary circumstances of this case."

TTOD and Lapeer argue in their motion for summary judgment that there is no evidence that TTOD and Lapeer disregarded their separate legal status at any time. TTOD and Lapeer were owned at all times by different individuals than the individual who owned Dott Acquisition. TTOD and Lapeer at all times had separate and independent counsel from Dott Acquisition. Nor is there any evidence that TTOD and Lapeer in any way commingled their assets with the assets of Dott Acquisition.

In response, the Trustee argues that Dott Acquisition took over TTOD's business "in a seamless transaction." More specifically, Dott Acquisition "acquired" TTOD's assets and "used" TTOD's name and other intangibles in the operation of Dott Acquisition's business. In sum, the Trustee argues that "TTOD made a ghost" out of Dott Acquisition (Trustee's Br. at 56). As a result, the creditors of Dott Acquisition have sustained injuries. The Trustee argues that the Bankruptcy Court has the equitable power to "combine technically distinct business entities" (Trustee's Br. at 57). Using that power in this case is particularly appropriate the Trustee argues because "the creditors were fooled by TTOD in a calculated way to provide goods and services to an entity which

went 'poof'" (id.). To rectify these wrongs, the Trustee urges this Court to use its "power to put it all back together" (Trustee's Br. at 58).

In <u>Simon v. ASIMCO Technologies, Inc.</u> (<u>In re American Camshaft Specialties, Inc.</u>), 410 B.R. 765 (Bankr. E.D. Mich. 2009), this Court examined the concept of substantive consolidation. The Court noted that there is no Bankruptcy Code section that expressly creates a cause of action in favor of a bankruptcy trustee to substantively consolidate non-debtor entities. Rather, substantive consolidation "is a judicially created doctrine that treats separate legal entities as if they were merged into a single entity, pooling the assets and liabilities of the two entities, so that the assets of the two entities may result in a common fund available to satisfy the debts of both entities." <u>Id.</u> at 778. The <u>American Camshaft</u> opinion then reviewed a number of cases that have discussed the availability and application of the doctrine of substantive consolidation. Because there is no clear statement, either by the United States Supreme Court or by the Sixth Circuit Court of Appeals, enunciating a standard to determine when the elements of substantive consolidation are present, the Court reviewed the various tests that other courts have employed outside of the Sixth Circuit in considering substantive consolidation. Ultimately, <u>American Camshaft</u> adopted the standard for substantive consolidation developed by the Third Circuit Court of Appeals in <u>In re Owens Corning</u>, 419 F.3d 195, 211 (3rd Cir. 2005). Relying on <u>Owens Corning</u>, the Court in <u>American Camshaft</u> held that substantive consolidation of a non-debtor entity with a debtor was warranted only

> where it is shown that either: (i) the debtor and the non-debtor entity in their pre-petition conduct disregarded the separateness of their respective entities so significantly as to lead their creditors to treat them as one legal entity; or (ii) that post-petition, the assets and liabilities of the debtor and the non-debtor entity sought to be consolidated are so hopelessly scrambled and commingled that it is impossible to separate them and tell them apart thereby resulting in harm to all creditors.

410 B.R. at 787.

In this case, the Trustee does not have any evidence to show that TTOD and Lapeer, on the one hand, and Dott Acquisition, on the other hand, disregarded the separateness of their respective entities so significantly as to lead their creditors to treat them as one legal entity. The Trustee submitted only two affidavits from creditors of Dott Acquisition. The Police and Fire Retirement System of the City of Detroit loaned $6 million to Dott Acquisition. Its attorney, Donald A. Wagner, signed an affidavit attesting to the accuracy of various documents in his file. Contrary to the Trustee's allegation in her brief, Wagner's affidavit does not state that his client was "fooled by TTOD." It does not state that his client treated TTOD and Dott Acquisition as a single entity because of some conduct by TTOD and Dott Acquisition in which they disregarded the separateness of their respective entities. There is nothing in Wagner's affidavit that even remotely suggests that the Police and Fire Retirement System of the City of Detroit was somehow confused about the separateness of TTOD and Dott Acquisition in any way. The only other affidavit by a creditor of Dott Acquisition is Janice O'Brien's affidavit. But just like Wagner's affidavit, O'Brien's affidavit does not say that Haviland Products Company was somehow confused about the separateness of TTOD from Dott Acquisition when Haviland Products Company extended credit to Dott Acquisition. O'Brien's affidavit does not identify any conduct by either TTOD or Dott Acquisition that in any way confused Haviland Products Company about the separateness of these two entities. Instead, O'Brien's affidavit deals only with her efforts to collect the debt after Dott Acquisition went out of business. Even Gruits' affidavit does not identify any conduct by either TTOD or Dott Acquisition in which either of them disregarded their separateness from one another. Nor does Gruits identify even a single creditor who was somehow confused about the separateness of TTOD

-59-

from Dott Acquisition because of some conduct by TTOD and Dott Acquisition in which they disregarded their separateness from one another.

To the extent that the Trustee seeks substantive consolidation because of pre-petition conduct by TTOD and Dott Acquisition in which they disregarded their separateness, there are no genuine issues of material fact. The Trustee has produced no evidence to show either that TTOD and Dott Acquisition disregarded their separateness or that any creditors of Dott Acquisition were somehow misled into treating them as one entity.

As noted earlier, substantive consolidation can still be considered where the assets and liabilities of the debtor entity and the non-debtor entity sought to be consolidated are hopelessly scrambled and commingled so that it is impossible to separate them and tell them apart, thereby resulting in harm to all creditors. The schedules of assets filed by the Trustee for Dott Acquisition identify the Real Property, Equipment, Accounts and Inventory as property of Dott Acquisition. But that does not mean that those assets are somehow hopelessly scrambled and commingled with the assets of TTOD and Lapeer. The Judgment and the Eviction Orders fully and finally adjudicated the ownership of the Real Property, Equipment and Inventory, and the Settlement Agreement and Assignments unambiguously provided for the transfer of the Accounts. At the time of the involuntary bankruptcy petition against Dott Acquisition, it did not possess any assets. The Real Property, Equipment, Accounts and Inventory were all in the possession of TTOD and Lapeer. The Oakland County Lawsuit, the Eviction Proceedings, the Settlement Agreement and Assignments established that Dott Acquisition had no rights to any of those assets. There is no genuine issue of material fact regarding whether TTOD and Lapeer, on the one hand, and Dott Acquisition, on the other hand, scrambled or commingled their assets post-petition. They did not. Dott Acquisition had no assets post-petition.

-60-

As explained in <u>American Camshaft</u>, substantive consolidation is an extraordinary remedy, and one that is to be used sparingly. "The reason for such reluctance is obvious since the doctrine authorizes a court to look past the limited liability that is a hallmark of corporate law in the United States and the legal separateness of an entity that it provides for." 410 B.R. at 786. The Trustee does not have any factual support for her substantive consolidation claim. There are no genuine issues of material fact, and TTOD and Lapeer are entitled to summary judgment.

<u>Count V of counterclaim - preferential transfers</u>

In count V of her counterclaim, the Trustee requests that the Court avoid preferential transfers made by Dott Acquisition to TTOD and Lapeer. The Trustee does not describe the specific property transferred, but instead refers generally to transfers based upon certain pre-petition dates. Paragraph 102 of the Trustee's counterclaim describes the transfers sought to be avoided as follows:

> The Transfers of July 15, 2010 and the transfers made pursuant to the September 21, 2010 "Settlement Agreement" and any additional transfers made on or after October 20, 2009 including but not limited to the transfer of control over Debtor's assets and operation which occurred pursuant to the Interim Agreement were made on account of antecedent debt.

The Trustee brings count V pursuant to § 547(b) of the Bankruptcy Code, which gives a trustee the power to

> avoid any transfer of an interest of the debtor in property–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
> > (A) on or within 90 days before the date of the filing of the petition; or
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if–
> > (A) the case were a case under chapter 7 of this title;
> > (B) the transfer had not been made; and

-61-

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In their motion for summary judgment, TTOD and Lapeer first point out that the Trustee's paragraph 102 does not even describe the property alleged to have been transferred. But to the extent that paragraph 102 is intended to refer to the Real Property, Equipment or Inventory, TTOD and Lapeer argue that Dott Acquisition did not have any interest in such property to transfer because all of its claims to such property were extinguished by the Judgment. Second, to the extent that paragraph 102 refers to the Accounts, TTOD and Lapeer argue that TTOD has a valid, fully perfected and enforceable security interest in the Accounts such that any transfer of an interest in the Accounts by Dott Acquisition did not enable TTOD to receive more than it would have received in a Chapter 7 liquidation of Dott Acquisition. Third, despite the imprecision of paragraph 102's description of the transfers, TTOD and Lapeer argue that any possible avoidance action by the Trustee must be limited to those transfers of property that were made within 90 days before the involuntary bankruptcy petition was filed. The reason for that is because neither TTOD nor Lapeer are insiders of Dott Acquisition.

The Trustee filed her own motion for partial summary judgment on one issue under § 547(b). Specifically, the Trustee's motion requests that the Court find that TTOD and Lapeer are insiders of Dott Acquisition within the meaning of § 101(31) of the Bankruptcy Code, so that the look back period for avoiding preferential transfers under § 547(b)(4)(B) is one year before the involuntary petition against Dott Acquisition (i.e., October 21, 2009), rather than 90 days before the filing of the involuntary petition against Dott Acquisition (i.e., July 22, 2010).

Before examining any specific transfers of property made by Dott Acquisition to TTOD or Lapeer, it is important for the sake of efficiency to first resolve the issue of whether TTOD and

Lapeer are insiders of Dott Acquisition. If they are not insiders of Dott Acquisition, then the only

possible avoidable transfers are those transfers of property that Dott Acquisition made after July 22,

2010. On the other hand, if TTOD or Lapeer are insiders, then the Court will also have to examine

any transfers by Dott Acquisition that were made all the way back to October 22, 2009.

The term "insider" is not defined in the Bankruptcy Code. Instead, § 101(31) contains a non-

exclusive list of entities, each of which the Bankruptcy Code deems to be an insider. The non-

exclusive list under § 101(31) varies, depending upon whether the debtor is an individual, a

corporation or other entity. In Gold v. Rubin (In re Harvey Goldman & Co.), No. 11-04829,

2011 WL 3734912, at *2-*3 (Bankr. E.D. Mich. Aug. 24, 2011), the Court discussed the concept

of insider as follows:

> "According to the legislative history accompanying the statutory definition
> of insider, '[a]n insider is one who has a sufficiently close relationship with the
> debtor that his conduct is made subject to closer scrutiny than those dealing at
> arm's length with the debtor.'" Jahn v. Economy Car Leasing, Inc. (In re
> Henderson), 96 B.R. 820, 825 (Bankr. E.D. Tenn. 1989) (quoting H.R. Rep.
> No. 595, 95th Cong., 2d Sess. 312, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963,
> 6269).

> Because of his close relationship with the debtor, an insider typically
> knows more about the debtor's financial affairs than the debtor's
> other creditors, and is often in a position to influence or control, at
> least in part, the debtor's actions. An insider is usually the first to
> know that a debtor is contemplating bankruptcy. Armed with this
> information and power to control the debtor, the insider may step
> ahead of other creditors demanding payment and then influence the
> timing of the debtor's bankruptcy petition to avoid the ninety-day
> preference period. By extending the preference liability of insiders
> to one year, Congress made it more difficult for an insider to
> manipulate the timing of bankruptcy so as to avoid the effect of the
> preference section.

Id. (citation omitted).

-63-

By providing only a non-exclusive list of entities that are treated as insiders, § 101(31) permits a court to examine in each case the specific facts surrounding the relationships of other entities to a debtor to determine whether a particular relationship is one that calls for closer scrutiny than an arm's-length relationship. But, by providing that "the term 'insider' includes" a non-exclusive list of relationships with a debtor, Congress has essentially created an irrebutable presumption that any entity having the attributes of one of the relationships in this non-exclusive list *always* makes such entity an insider of a debtor.

In her brief in support of her motion for summary judgment, the Trustee argues that TTOD and Lapeer both became insiders of Dott Acquisition once the Interim Agreement was made on December 15, 2009. The reason, according to the Trustee, is that the Interim Agreement put Gatt into control of Dott Acquisition, and Gatt exercised such control "on behalf of" TTOD and Lapeer. The Trustee's brief does not indicate whether the Trustee believes TTOD and Lapeer to be within the non-exclusive list of insiders set forth in § 101(31), or whether the Trustee believes TTOD and Lapeer to be insiders even though they may not have the attributes of one of the relationships specifically described in that non-exclusive list.

After TTOD and Lapeer filed their response to the Trustee's motion for summary judgment on the insider issue, the Trustee filed a reply brief with a much more detailed discussion of why the Trustee believes that TTOD and Lapeer are insiders of Dott Acquisition. In this brief, the Trustee refers to one of the specific relationships described in § 101(31) of the Bankruptcy Code as the basis for the Trustee's contention that TTOD and Lapeer are insiders. Now, the Trustee argues that TTOD and Lapeer are insiders under either § 101(31)(B)(iii), which states that if the debtor is a corporation, then the term "insider" includes a "person in control of the debtor," or under § 101(31)(C)(v), which states that if the debtor is a partnership, then the term "insider" includes a "person in control of the debtor." Although Dott Acquisition is a limited liability company, and not either a corporation or partnership, the Trustee argues that the analysis is the same: a person in

-64-

control of a debtor that is a limited liability company is an insider of that debtor. According to the Trustee, TTOD, and its related company, Lapeer, had "absolute control of [Dott Acquisition] for the period commencing December 15, 2009." As such, they are insiders of Dott Acquisition pursuant to § 101(31).

TTOD and Lapeer argue that they never controlled Dott Acquisition, through Gatt, or otherwise. TTOD and Lapeer argue that far from having a close relationship with Dott Acquisition, which would enable them to influence Dott Acquisition's conduct, TTOD was locked in very contentious litigation with Dott Acquisition in several courts, and that Dott Acquisition, far from acceding to any control by TTOD, vigorously opposed TTOD's request for relief at every turn.

The Court agrees with TTOD and Lapeer. There are no genuine issues of material fact on this issue. TTOD and Lapeer are not insiders of Dott Acquisition.

"'Actual control' is the ability of the creditor to unqualifiably dictate corporate policy and the disposition of corporate assets, or the legal right or ability to exercise control over a corporate entity." Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.), 531 F.3d 1272, 1279 (10th Cir. 2008) (internal quotation marks and citations omitted).

As evidence of actual control, the Trustee first points to the Interim Agreement, which was made for the purpose of resolving TTOD's motion in the Oakland County Lawsuit requesting either surrender of Dott Acquisition's assets, or the appointment of a receiver. The Interim Agreement provided for the appointment of Gatt as the CEO and CFO for Dott Acquisition. The Interim Agreement expressly stated that Gatt could not be removed from those positions without TTOD's consent. Further, the Trustee relies on Gruits' affidavit, which states in paragraph 47 that Gatt "took all direction" from Kojaian. Finally, the Trustee points to the "smoking gun," Kojaian's

December 16, 2009 email to Andrew W. Roy at Comerica Bank, in which Kojaian stated his belief that the Interim Agreement "gives us control of the assets and the operations."

TTOD and Lapeer concede that the Interim Agreement placed Gatt in control of Dott Acquisition. They also concede that the Interim Agreement precluded Gatt's removal without TTOD's consent. However, they point out that there is no provision in the Interim Agreement that permitted *them* in any way to exercise any control or direction over Gatt or Dott Acquisition. In support, they also rely on affidavits by Thomas Alongi, a certified public accountant, and Gatt. Alongi's affidavit states without contradiction that at the time Gatt took the appointment under the Interim Agreement, Gatt was a former employee of Dott Acquisition who was on a medical leave. Alongi's affidavit further states, again without contradiction, that Gatt held no position with TTOD during the time that he served as the CEO and CFO of Dott Acquisition under the Interim Agreement. Gatt's affidavit is equally clear. It states that Gatt "held no position with TTOD while [he] was the CEO/CFO of [Dott Acquisition] pursuant to the Interim Agreement." Gatt's affidavit further states that Gatt "did not take direction from representatives of TTOD with regard to the business operations of [Dott Acquisition]."

In deciding whether there is a genuine issue of fact regarding whether TTOD "actually controlled" Dott Acquisition through Gatt, the Court first notes that the Interim Agreement does not state that TTOD shall have any right to control the behavior of Gatt as CEO and CFO of Dott Acquisition. Second, Gruits' affidavit regarding this issue consists of a single, conclusory statement that Gatt "took all direction" from Kojaian. Because Gruits does not describe a single act or instance of TTOD or Kojaian directing or controlling Gatt, his affidavit is not probative on the issue of actual control. Third, the Trustee's reliance on Kojaian's December 16, 2009 email is misplaced. As explained earlier, Kojaian's subjective belief as to what would happen when the Interim Agreement

was made is irrelevant because there is no proof that TTOD actually did exert control over Gatt or Dott Acquisition. It is probative only of what Kojaian believed, or hoped, might happen, but is not probative of what did happen. Fourth, the statements in Alongi's affidavit and Gatt's affidavit are not controverted by any probative evidence.

In addition, despite the Trustee's insistence otherwise, the fact that Gatt previously worked for TTOD prior to his taking the position as CEO and CFO for Dott Acquisition is not probative of the Trustee's allegation that Gatt acted as CEO and CFO of Dott Acquisition *for* TTOD. Nor does the fact that Gatt resigned from Dott Acquisition on July 15, 2010 and then went to work for Lapeer establish that TTOD or Lapeer had any control over Dott Acquisition *during the time* that Gatt served as CEO and CFO under the Interim Agreement.

The Interim Agreement and the other materials assembled by the Trustee in support of her motion for partial summary judgment, and in opposition to TTOD and Lapeer's motion for summary judgment, show that Gatt was in control of Dott Acquisition from December 15, 2009, when the Interim Agreement was made, until July 15, 2010. But they do not tend to prove that TTOD or Lapeer were in control of Dott Acquisition during that period of time. To the contrary, all of the affidavits and other material that are in this voluminous record establish beyond dispute that TTOD and Dott Acquisition were bitter litigants throughout that period of time. The affidavits and other materials assembled establish that throughout that period, TTOD and Lapeer had no more actual control over Dott Acquisition than Dott Acquisition had control over them.

The Court agrees with the Trustee that there are no genuine issues of fact. But the Court disagrees with the Trustee's conclusion that the undisputed facts in the record establish that TTOD and Lapeer are insiders of Dott Acquisition. The undisputed facts establish the contrary. TTOD and

Lapeer did not have actual control of Dott Acquisition and are not insiders of Dott Acquisition. TTOD and Lapeer, not the Trustee, are entitled to summary judgment on this issue.

Because TTOD and Lapeer are not insiders, the look back period for the Trustee to avoid any potential preferential transfers is limited to 90 days before the filing of the involuntary petition under § 547(b)(4)(A). As noted before, the Trustee's allegations of exactly what property was transferred are imprecise. But the Trustee, TTOD and Lapeer all agree that the Settlement Agreement and the Assignments do provide for a transfer of any remaining interest that Dott Acquisition had in any of its assets. The first Assignment attached to the Settlement Agreement states that Dott Acquisition transfers

> [a]ll of its assets of every kind and nature, including but not limited to all accounts, accounts receivable, inventory, raw materials, work in process, claims, actions, causes of action, contract rights, cash, bank accounts, and the proceeds thereof, wherever located and however characterized.

As explained earlier in the opinion, the Court has already found that Dott Acquisition never did own the Real Property, Equipment or Inventory. Any claims that it ever had to such property were extinguished by the Judgment, which was entered on June 9, 2010, more than 90 days before the involuntary petition. But the situation with the Accounts is different. Dott Acquisition did have an interest in the Accounts within the 90 days before the involuntary bankruptcy petition. That interest was expressly transferred to Lapeer pursuant to the Settlement Agreement and Assignments. Therefore, for purposes of § 547(b), it does appear that there was a transfer of an interest in the Debtor's property made within 90 days before the involuntary bankruptcy petition was filed against Dott Acquisition. Moreover, this transfer was indisputably made on account of the antecedent debt owing by Dott Acquisition to TTOD. Further, even though the Assignment transferred Dott Acquisition's interest in the Accounts to Lapeer, it cannot seriously be questioned that transfer was

-68-

made for the benefit of TTOD on account of the debt owing by Dott Acquisition to TTOD. The next element of a preferential transfer is that it was made while the debtor was insolvent. TTOD and Lapeer do not dispute that Dott Acquisition was insolvent at the time that it made any transfers pursuant to the Settlement Agreement and Assignments. Accordingly, it appears that all of the elements of a preferential transfer under § 547(b)(1) through (4) are present with respect to Dott Acquisition's transfer of its interest in the Accounts. But there is one more element under § 547(b)(5): whether the transfer enabled the creditor, TTOD, to receive more than it would have received in a Chapter 7 liquidation.

The Court earlier found that TTOD had a pre-petition, properly perfected, valid and enforceable security interest in the Accounts (as well as the Inventory). For that reason, the transfer by Dott Acquisition of any interest that it may have had in the Accounts is not a preference, because it did not enable TTOD to receive more than it would have received in a Chapter 7 liquidation. "[P]re-petition transfers [by a debtor] to fully secured creditors are protected under the Bankruptcy Code: 'Payments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation.'" Triad International Maintenance Corp. v. Southern Air Transport, Inc. (In re Southern Air Transport, Inc.), 511 F.3d 526, 533 (6th Cir. 2007) (quoting Ray v. City Bank & Trust Co. (In re C-L Cartage Co.), 899 F.2d 1490, 1493 (6th Cir. 1990)).

TTOD was owed over $9.8 million pursuant to the Judgment. TTOD had a valid, properly perfected security interest in the Accounts. Dott Acquisition's transfer of any interest it had in the Accounts did not enable TTOD to receive more than it would have received in a Chapter 7 liquidation because TTOD had a valid and properly perfected security interest in the Accounts. The Trustee has not come forward with any evidence to show that there is a genuine issue of material

-69-

fact as to whether the transfer of Dott Acquisition's interest in the Accounts enabled TTOD to receive more than it would have received in a Chapter 7 liquidation.

That leaves one other possible preferential transfer. While TTOD owned the Real Property and the Equipment, and had a properly perfected and enforceable security interest in the Inventory and Accounts, TTOD concedes that it did not have a security interest in other types of personal property of Dott Acquisition. Therefore, if Dott Acquisition owned some personal property other than Inventory and Accounts, such personal property would not have been covered by TTOD's security interests. To the extent that Dott Acquisition owned any such property and then transferred it to Lapeer pursuant to the Settlement Agreement and Assignments, that transfer could arguably constitute a preferential transfer, because it was made on account of an antecedent debt owing to TTOD, within 90 days before Dott Acquisition's bankruptcy, at a time when Dott Acquisition was insolvent, and it could have enabled TTOD to receive more than it would have received in a Chapter 7 liquidation, since TTOD did not have a security interest in that type of property. The Trustee says that this is just what happened here. The Trustee argues that there were additional items of personal property and equipment that were acquired by Dott Acquisition, but were not part of the Equipment, and that this additional personal property and equipment was swept up in the transfer made by Dott Acquisition to Lapeer under the Settlement Agreement and Assignments.

The Court agrees with the Trustee's theory. If Dott Acquisition acquired some personal property, such as additional equipment, during the time that it operated its business, and transferred such personal property to TTOD or Lapeer, then such transfer may have been a preferential transfer. The question before the Court is whether there are any genuine issues of material fact regarding whether Dott Acquisition did have such additional equipment or other personal property.

For support, the Trustee again relies on Gruits' affidavit. In paragraph 28, Gruits states that Dott Acquisition "purchased additional equipment outright during the time it operated the business with a value I believe to be greater than $1 million . . . ." Gruits' affidavit then goes on to describe the type of "additional equipment" purchased by Dott Acquisition as including computer equipment, flat screen monitors, new desktop units, new servers, new printers, mainframe computer, new molds, titanium tipped racks, and other items of personal property. Gruits' affidavit states that these items of "additional equipment" were transferred to TTOD or Lapeer. Although TTOD and Lapeer dispute the Trustee's assertion that there was any such "additional equipment" owned by Dott Acquisition and transferred to Lapeer, in this instance, Gruits' affidavit, in the absence of any contrary affidavit or other evidence, does create a genuine issue of material fact.

In sum, the Court agrees with TTOD and Lapeer that they are not insiders. Therefore, for purposes of count V, the applicable look back period is 90 days. TTOD and Lapeer are entitled to summary judgment with respect to any transfers made by Dott Acquisition more than 90 days before the involuntary petition was filed. TTOD and Lapeer are also entitled to summary judgment with respect to any transfer that the Trustee alleges to have been as to the Real Property, Equipment and Inventory. As explained in detail earlier in the opinion, Dott Acquisition did not have any interest in any of those assets at any time during the 90 days prior to the involuntary bankruptcy petition. As a consequence, it could not have transferred any interest in such assets to TTOD or Lapeer during the 90 days before bankruptcy. TTOD and Lapeer are also entitled to summary judgment with respect to any transfer of Accounts, as the Accounts were subject to a properly perfected, valid and enforceable security interest held by TTOD. But the analysis is a little bit different with respect to any other personal property, such as the "additional equipment" described by Gruits in his affidavit. There is no evidence in the record that TTOD held a security interest that would attach to such

-71-

"additional equipment." Therefore, to the extent that there was a transfer of any such "additional equipment," it may arguably be a preference. There are issues of fact as to whether Dott Acquisition did own such "additional equipment," and if so, whether it transferred such "additional equipment" to TTOD or Lapeer, and whether the transfer of such "additional equipment" enabled TTOD to receive more than it would have received in a Chapter 7 liquidation. As a result, the Court will deny the Trustee's motion for partial summary judgment on the insider issue, and will grant TTOD and Lapeer's motion for summary judgment on all of count V except to the extent of any transfers of "additional equipment" made pursuant to the Settlement Agreement and Assignments.

<u>Count VI of counterclaim - fraudulent transfers - actual fraud</u>

In count VI of her counterclaim, the Trustee requests a judgment avoiding transfers made by Dott Acquisition to TTOD and Lapeer based upon actual fraud under § 548(a)(1)(A) of the Bankruptcy Code. Section 548(a)(1)(A) permits a trustee to avoid a transfer made by a debtor within two years of the filing of a petition, if the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted[.]" Much like her preference count, the Trustee's fraudulent transfer count does not specifically identify the transfers sought to be avoided, but instead refers generally to transfers made on July 15, 2010, September 21, 2010, and "on or after October 20, 2009."

TTOD and Lapeer argue that they are entitled to summary judgment on count VI because a fraudulent transfer under § 548(a)(1) requires that there must be a transfer of an interest of the debtor in property. Here, there was no transfer of any interest of Dott Acquisition in the Real Property, Equipment, or Inventory, because Dott Acquisition had no interest in such assets. More fundamentally, to the extent that Dott Acquisition did transfer any property interests to Lapeer that

-72-

were not already owned by TTOD (e.g., Accounts, or "additional equipment"), the Trustee has come forward with no evidence to show that such transfer was made by Dott Acquisition with intent to defraud its creditors.

TTOD and Lapeer are correct. The Trustee's brief in opposition to TTOD and Lapeer's motion for summary judgment does not focus on Dott Acquisition's intent, but instead focuses on TTOD's intent. The Trustee misses the point. Recovery under § 548(a)(1) of the Bankruptcy Code requires proof of fraudulent intent by the transferor, the debtor. All of the Trustee's extensive materials in support of her brief responding to TTOD and Lapeer's summary judgment relate solely to TTOD's alleged fraudulent intent. The Trustee has not come forward with any evidence to show that there was any transfer made by Dott Acquisition with intent to defraud Dott Acquisition's creditors. There are no genuine issues of material fact. TTOD and Lapeer are entitled to summary judgment on count VI.

<u>Count VII of counterclaim - fraudulent transfers - constructive fraud</u>

In count VII of her counterclaim, the Trustee requests that the Court avoid constructively fraudulent transfers under § 548(a)(1)(B) of the Bankruptcy Code. Section 548(a)(1)(B) of the Bankruptcy Code permits a trustee to avoid a transfer made by a debtor within two years before the filing of a petition, if the debtor "received less than a reasonably equivalent value in exchange for such transfer" and was insolvent at the time of such transfer. Once again, the Trustee does not describe the transfers with any degree of precision, but simply refers back to paragraph 102 of her counterclaim.

There are two problems with this count. First, Dott Acquisition never owned the Real Property, Equipment and Inventory. Dott Acquisition did own the Accounts, but TTOD had a valid perfected security interest in the Accounts. To the extent that Dott Acquisition transferred any

interest that it may have had in the Accounts, it did not do so for less than reasonably equivalent value. TTOD held a $9.8 million Judgment against Dott Acquisition.

The only possible issue of fact concerning the Trustee's counterclaim for avoidance of constructively fraudulent transfers is if the Trustee can show that there was some additional equipment or other personal property interest that Dott Acquisition had, that was not included in the Real Property, Equipment, Inventory and Accounts, but was instead acquired by Dott Acquisition during the time that it operated its business and that it subsequently transferred to TTOD and Lapeer as part of the Settlement Agreement and Assignments. If the Trustee can produce evidence that Dott Acquisition owned some additional equipment or other personal property that was not part of the Real Property, Equipment, Inventory and Accounts, and that it transferred such other property to TTOD or Lapeer, then it is possible that an action to avoid the transfer of such property can be maintained under § 548(a)(1)(B).

Gruits' affidavit raises a genuine issue of material fact whether Dott Acquisition did acquire and then transfer to Lapeer additional equipment. Therefore, the Court will grant partial summary judgment to TTOD and Lapeer with respect to count VII, leaving open only the issue of whether the Trustee can show that there was some additional equipment transferred by Dott Acquisition to TTOD or Lapeer.

<u>Count VIII of counterclaim - statutory and common law conversion</u>

In count VIII of her counterclaim, the Trustee seeks a judgment for conversion. Count VIII consists solely of paragraph 112, which alleges that TTOD and Lapeer converted Dott Acquisition's property in violation of Mich. Comp. Laws § 600.2919a. Once again, the Trustee fails to describe the property alleged to have been converted by TTOD and Lapeer, saying only that the converted

-74-

property consists of the "July 15, 2010 transfers." Count VIII asks to avoid such transfers and requests a money judgment in favor of the Trustee for three times the total value of such transfers.

This counterclaim is based on a state law cause of action. Therefore, the Court looks to Michigan law. Mich. Comp. Laws § 600.2919a provides that

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

This statute does not define conversion. The definition is instead provided by common law: "'Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'" Thoma v. Tracy Motor Sales, Inc., 104 N.W.2d 360, 362 (Mich. 1960) (quoting Nelson & Witt, Inc. v. Texas Co., 239 N.W. 289, 291 (Mich. 1931)).

TTOD and Lapeer first argue that count VIII lacks a sufficient factual basis to even identify the property allegedly converted. There were no transfers of property on July 15, 2010 identified by the Trustee. To the extent that the Trustee's reference to the July 15, 2010 transfers includes the Real Property, the statute cited by the Trustee does not apply, because it only applies to personal property. To the extent that the Trustee's claim for conversion refers to the Equipment or Inventory, the statute also does not apply, because TTOD owned the Equipment and Inventory and, therefore, could not have converted it. Finally, as for the Accounts, TTOD and Lapeer argue that there was

-75-

no conversion because Dott Acquisition voluntarily transferred its interest in the Accounts to Lapeer, not on July 15, 2010, but instead pursuant to the Settlement Agreement and Assignments.

Like so many of the Trustee's counts in her counterclaim, count VIII is built on a faulty premise. The Trustee insists that Dott Acquisition, and not TTOD or Lapeer, owns the Real Property, Equipment, Accounts and Inventory. For all of the reasons previously explained in this opinion, that premise is demonstrably false. Since Dott Acquisition never owned the Real Property, Equipment or Inventory, by definition, there can be no conversion of such property. As for the Accounts, it is true that Dott Acquisition did own them. But as explained before, any interest that Dott Acquisition had in the Accounts was voluntarily transferred by it pursuant to a valid and binding Settlement Agreement and Assignment. None of the voluminous materials assembled by the Trustee create any issue of fact regarding the Trustee's allegation that somehow TTOD and Lapeer wrongfully exerted control over Dott Acquisition's property. All of Dott Acquisition's claims to the Real Property, Equipment and Inventory were extinguished by the Judgment, which took place long before July 15, 2010, the date of the alleged conversion. Dott Acquisition's interest in the Accounts was extinguished pursuant to the Settlement Agreement and Assignments. There are no genuine issues of material fact. TTOD and Lapeer did not convert Dott Acquisition's property, and they are entitled to summary judgment with respect to count VIII.

<u>Count IX of counterclaim - stay violation</u>

In count IX of her counterclaim, the Trustee requests a money judgment for a violation of the automatic stay of § 362 of the Bankruptcy Code. Under § 362(a)(3), "a petition filed under section 301, 302, or 303" of title 11, "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" The Trustee alleges that TTOD and Lapeer "have withheld property of this

-76-

estate and exercised control over property of this estate in willful violation of the automatic stay." The Trustee asks for actual damages, as well as punitive damages under § 362(k).

TTOD and Lapeer request summary judgment on count IX because it too is premised on the faulty assumption that TTOD or Lapeer have acted to obtain possession or exercise control over some property interest of Dott Acquisition which became property of the bankruptcy estate. The Trustee stands by her assertion that Dott Acquisition holds an interest in the Real Property, Equipment, Inventory and Accounts, and that Dott Acquisition's interest in these assets became property of its bankruptcy estate notwithstanding the Judgment, Eviction Orders, Settlement Agreement and Assignments. This count, like so many of the Trustee's other counts, flies in the face of the Judgment, Eviction Orders, Settlement Agreement and Assignments. When the involuntary petition was filed against Dott Acquisition, it did not have any property interests in the Real Property, Equipment, Inventory and Accounts. Therefore, there are no genuine issues of material fact, and TTOD and Lapeer are entitled to summary judgment on count IX.[16]

<u>Count X of counterclaim - turnover</u>

In count X of her counterclaim, consisting of two paragraphs, the Trustee requests an order directing TTOD and Lapeer to "turn over all assets of this estate[.]" Count X does not specifically describe the assets that the Trustee seeks, but instead alleges generally only that TTOD and Lapeer

---

[16] There are other problems with this count. The Trustee does not provide any authority that would support the *Trustee* being entitled to seek damages for violation of the automatic stay at all, let alone for punitive damages that are only compensable under § 362(k) for an "individual injured by any willful violation of a stay." But the Court need not reach those problems because the Trustee's count for violation of the automatic stay fails in any event, because the Trustee has not come forward with sufficient evidence to show that TTOD or Lapeer acted to obtain possession of or exercise control over any property of the bankruptcy estate.

"hold property of this estate and proceeds of property of this estate [and] [t]urnover is authorized [by] 11 U.S.C. §542(a)."

Section 542(a) requires that

an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The Trustee's brief is no more illuminating. It states that "the Trustee has repeatedly demanded the surrender of this estate's assets and documents. TTOD/[Lapeer] has surrendered nothing but a big pile of old and mostly useless records." (Trustee's Br. at 64.)

TTOD and Lapeer argue that they are entitled to summary judgment because there is no genuine issue of fact regarding any property that they hold that the estate has an interest in. They make the same arguments requesting summary judgment of this count that they made in connection with their request to dismiss the Trustee's count for stay violation. The Court again agrees with all of these arguments. There is no evidence that TTOD or Lapeer have any property that belongs to this estate. The Trustee's request for relief simply does not take into account the Judgment, Eviction Orders, Settlement Agreement and Assignments. The Judgment made it clear that all of Dott Acquisition's claims to the Real Property, Equipment and Inventory were extinguished. The Settlement Agreement and Assignments made it clear that any remaining property interests that Dott Acquisition had either in the Accounts, or in any other property for that matter, were transferred by Dott Acquisition to Lapeer. There is nothing for TTOD or Lapeer to turn over, they own the assets. There is no genuine issue of material fact, and TTOD and Lapeer are entitled to summary judgment on count X.

-78-

In count XI of her counterclaim, the Trustee seeks many forms of relief, including the appointment of a special master, expert witness or business appraiser to prepare an accounting of all of the assets "seized" by TTOD on July 15, 2010, and an award of a money judgment in favor of the Trustee in an amount equal to the amount by which the value of such assets exceeds the $9.8 million owing by Dott Acquisition to TTOD under the Judgment. This count too hinges on the Trustee proving that TTOD improperly seized the assets of Dott Acquisition. TTOD and Lapeer repeat their arguments that there was no improper seizure by either of them of Dott Acquisition's property, and no purpose would be served by ordering an accounting.

This counterclaim is based on a state law cause of action. Therefore, the Court looks to Michigan law. "Michigan's courts traditionally allowed a party to pursue an equitable accounting action where he was unsure of the amounts at stake and where the accounts at issue were 'greatly complicated.'" Digital 2000, Inc. v. Bear Communications, Inc., 130 Fed. Appx. 12, 22-23 (6th Cir. Apr. 18, 2005) (quoting Basinger v. Provident Life & Accident Ins. Co., 239 N.W.2d 735, 738 (Mich. Ct. App. 1976)).

"'To sustain a bill for an accounting there must be mutual demands, a series of transactions on one side, and payments on the other. Where all of the items are on one side, there can be no accounting.'" Boyd v. Nelson Credit Centers, Inc., 348 N.W.2d 25, 27 (Mich. Ct. App. 1984) (quoting Laubengayer v. Rohde, 133 N.W. 535 (Mich. 1911)). An accounting is usually reserved for transactions that "are so complex that ordinary discovery procedures would be inadequate." Boyd v. Nelson Credit, 348 N.W. at 27. "An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." Id. (citing Cyril J. Burke, Inc. v. Eddy & Co., 51 N.W.2d 238 (Mich. 1952). "In light of the broad discovery available to litigants, accounting

-79-

actions are of dubious utility." Digital 2000, 130 Fed. Appx. at 23 (citing Basinger v. Provident Life, 239 N.W.2d at 738 n.15).

Once again, the Trustee's request for an accounting misses the mark. All of Dott Acquisition's claims to ownership of the Real Property, Equipment and Inventory, as well as any other claims it had against TTOD, were extinguished by the Judgment. To the extent that Dott Acquisition retained any ownership interest in any property, including the Accounts, it transferred all of those property interests to Lapeer pursuant to the Settlement Agreement and Assignments. The Trustee's insistence that TTOD and Lapeer "improperly seized" Dott Acquisition's business, completely ignores the Judgment and the Eviction Orders rendered against Dott Acquisition, and completely ignores Dott Acquisition's own conduct in voluntarily transferring any remaining property interests that it had to Lapeer under the Settlement Agreement and Assignments. The extraordinary remedy of accounting does not warrant this Court appointing a special master, expert witness or business appraiser to prepare an accounting and valuation of property owned by TTOD and Lapeer, when the bankruptcy estate has no claim to ownership of that property. Granting the Trustee an accounting would improperly lend a suggestion of credibility to the Trustee's unfounded claims of ownership to TTOD and Lapeer's property. The Court agrees with TTOD and Lapeer that they are entitled to summary judgment on count XI.

Count XII of counterclaim - unjust enrichment

In count XII of her counterclaim, the Trustee requests a judgment by this Court holding that the Judgment in the Oakland County Lawsuit has been fully satisfied by TTOD's "improper seizure" of assets of Dott Acquisition. Further, the Trustee seeks a money judgment for the amount by which the value of the "improperly seized" assets exceeds the balance owing on the Judgment. All of this

-80-

relief is sought in count XII, according to the Trustee, to prevent unjust enrichment in favor of TTOD and Lapeer.

This counterclaim is based on a state law cause of action. Therefore, the Court looks to Michigan law. Under Michigan law, a claim for unjust enrichment requires proof of "(1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain." Dumas v. Auto Club Ins. Ass'n, 473 N.W. 2d 652, 663 (Mich. 1991) (quotation marks and citation omitted). "When these elements are met, 'the law operates to imply a contract in order to prevent unjust enrichment.'" C.T. Charlton & Assocs., Inc. v. Thule, Inc., No. 12-2619, 2013 WL 5433434, at *6 (6th Cir. Sept. 30, 2013) (quoting Barber v. SMH (US), Inc., 509 N.W. 2d 791, 796 (Mich. Ct. App. 1993)). "A claim for unjust enrichment is not available if there is an express contract[.]" Able Demolition, Inc. v. City of Pontiac, 739 N.W.2d 696, 702 n.4 (Mich. Ct. App. 2007) (citation omitted).

TTOD and Lapeer argue that count XII fails under the first element, which requires proof that the plaintiff conferred a benefit on the defendant. Since Dott Acquisition does not own the Real Property, Equipment, Inventory and Accounts, Lapeer's ability to use those assets cannot possibly be a benefit conferred by Dott Acquisition. As a result, TTOD and Lapeer request summary judgment in their favor.

The Court agrees with TTOD and Lapeer. The fatal flaw in count XII is the Trustee's continued failure to recognize and accept the Judgment, Eviction Orders, Settlement Agreement and Assignments. The Judgment extinguished all claims that Dott Acquisition had to the Real Property, Equipment and Inventory. Yet the Judgment still awarded TTOD over $9.8 million as a money judgment against Dott Acquisition. This Court cannot rewrite the Judgment to provide for Dott Acquisition to receive a credit against the Judgment for property – Real Property, Equipment and

-81-

Inventory – that it does not own. Perhaps the result would be different if the Opinion and Judgment did not extinguish Dott Acquisition's claims of ownership to the Real Property, Equipment and Inventory. But that is not what happened. The only property in which Dott Acquisition retained an ownership interest after the Judgment was the Accounts. But the Accounts were subject to a valid, perfected and enforceable security interest in favor of TTOD. And when Dott Acquisition signed the Settlement Agreement and Assignments, it received a credit against the Judgment in exchange for, among other things, its transfer of the Accounts to Lapeer. The credit described in the Settlement Agreement was $500,000. There is no evidence in the record to show that the Accounts had a value greater than that amount, let alone a value in an amount greater than the $9.8 million owing on the Judgment.

As a matter of law, it is not inequitable for TTOD or its designee, Lapeer, to retain the Real Property, Equipment and Inventory since the Judgment clearly extinguished all of Dott Acquisition's claims to such property. Nor is it inequitable for TTOD, or its designee, Lapeer, to retain the Accounts, since Dott Acquisition transferred its interest in the Accounts to Lapeer in exchange for a credit against the Judgment. Neither TTOD nor Lapeer received a benefit that is somehow inequitable. Dott Acquisition took its best shot at litigating its claims to the Real Property, Equipment, Inventory and Accounts. It lost. It did not appeal. As a matter of law, TTOD's retention of the benefits it received from the Judgment (and from the Eviction Orders as well) is not an inequitable benefit that is in any way unjust. The Court agrees with TTOD and Lapeer that there are no genuine issues of material fact and that they are entitled to summary judgment on count XII of the Trustee's counterclaim.

-82-

## The Trustee's request for additional discovery

In her opposition to TTOD and Lapeer's motion for summary judgment, the Trustee raises one other issue that the Court must consider. Specifically, the Trustee argues that if the Court finds that the Trustee has not raised material questions of fact as to any claim in the complaint or counterclaim, the Court should allow the Trustee to conduct additional discovery. In support, the Trustee points out that discovery in this adversary proceeding is incomplete and that it was stayed once the two summary judgment motions were filed.

The Trustee's argument actually raises two distinct but related issues. The first issue pertains to Fed. R. Civ. P. 56(d), which is incorporated in this adversary proceeding by Fed. R. Bankr. P. 7056. That provision is applicable to situations when a non-moving party is unable to present facts essential to justify its opposition to a motion for summary judgment. The second issue relates to the propriety of granting a summary judgment in an adversary proceeding where discovery has not yet closed. The Court will deal with these two issues in sequence.

Rule 56(d) provides that,

> [i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

"The party opposing a motion for summary judgment, therefore, possesses no absolute right to additional time for discovery under Rule 56." Emmons v. McLaughlin, 874 F.2d 351, 356 (6th Cir. 1989) (citations omitted). "Rule 56([d]) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000) (citation omitted). "Bare allegations or vague

-83-

assertions of the need for discovery are not enough." <u>Summers v. Leis</u>, 368 F.3d 881, 887 (6th Cir. 2004) (citation omitted). The nonmoving party "must state with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." <u>Id.</u> (internal quotation marks and citation omitted).

Frey filed an affidavit. Although the affidavit does not mention Rule 56(d), it does address the Trustee's request for additional discovery. In it, Frey states the following: he is the co-counsel for the Trustee who has been responsible for performing much of the discovery, both in the bankruptcy case and in the adversary proceeding (paragraph 4); the exhibits submitted in support of the Trustee's brief were obtained through formal or informal discovery (paragraph 6); the only records obtained from TTOD and Lapeer are boxes of unorganized, incomplete and mostly unuseful documents (paragraph 8); the exhibits filed in support of the Trustee's brief consist of business records and public records received by the Trustee from multiple sources, including General Motors, Chrysler, Flex–N–Gate, Plaskolite, Haviland, Easy Handling Co., Inc., Quality Coatings, Inc., Reliance Specialty Products, Inc., Midwest Business Credit, LLC, Bibby Financial Services, GE Capital Credit and City of Detroit Police and Fire Retirement System (paragraph 9); Frey has "expended literally thousands of hours pursuing document discovery and interviewing possible witnesses," yet much discovery remains to be performed because of objections and obstructions by TTOD and Lapeer (paragraph 10); and there are several months remaining for further discovery in this adversary proceeding (paragraph 13).

Frey's affidavit does not state with any degree of specificity what *facts* the Trustee is unable to present to support her opposition to TTOD and Lapeer's motion for summary judgment. Frey's affidavit contains generalized allegations that additional discovery is needed, but fails to state with any precision what materials the Trustee hopes to obtain by further discovery, and how those

-84-

materials will help her in opposing TTOD's and Lapeer's motion for summary judgment. In the Court's view, Frey's affidavit does not meet the standard of Rule 56(d).

The second issue implicated in the Trustee's request for additional discovery, and by Frey's affidavit in support of that request, relates to the fact that discovery has not yet closed in this adversary proceeding. According to the Trustee, that means that summary judgment is premature. The Sixth Circuit Court of Appeals has expressed concern in some circumstances over granting summary judgment prematurely. But the fact that the time for discovery is not yet over is not, by itself, determinative. In Plott v. General Motors Corp., 71 F.3d 1190 (6th Cir. 1995), the Sixth Circuit affirmed a summary judgment for the defendants even though the plaintiff had requested additional time for discovery. "Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case." Id. at 1195 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5, 257 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

> A number of different factors are applicable to [an argument that the court granted summary judgment prematurely], such as (1) when the appellant learned of the issue that is the subject of the desired discovery, (2) whether the desired discovery would have changed the ruling below, (3) how long the discovery period had lasted, (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

Id. at 1196-97 (collecting cases).

It is difficult to apply all of these factors to this case because Frey's affidavit does not identify with specificity exactly what additional discovery the Trustee needs to take. But the Trustee's brief points out that the Trustee has not yet taken the deposition of either Gatt or Kojaian. The Trustee does not explain what facts she hopes to learn from either Gatt or Kojaian. Nor does the Trustee adequately explain why the Trustee has not taken those depositions. When the Trustee

first moved to stay the adversary proceeding, the Trustee was already alleging that TTOD acted improperly and that Gatt was working on TTOD's behalf, starting in December, 2009. The schedules of assets, all based upon information provided by Gruits to the Trustee, were filed on January 7, 2011. They reflected Gruits' and the Trustee's belief that Dott Acquisition had an interest in the Real Property, Equipment, Accounts and Inventory, and held claims against TTOD and Lapeer. The Trustee's claims to the Real Property, Equipment, Accounts and Inventory have been staked out in this case since she filed the schedules on January 7, 2011, more than three years ago. The Trustee did not just learn the identity of Gatt and Kojaian, or about their roles in the pre-petition transactions.

As for the second factor, the Trustee makes no attempt to explain how Gatt or Kojaian could possibly tell the Trustee and the Court any information that would contradict or alter the Opinion, Judgment, Eviction Orders, Settlement Agreement or Documents.

Nor does the third factor help the Trustee. There has already been an extraordinarily long discovery period in this case. It has been more than three years since an order for relief was entered granting the involuntary petition against Dott Acquisition. The bankruptcy case file reflects that the Trustee actively pursued and obtained Rule 2004 examinations regarding TTOD and Lapeer from January through May, 2011. When TTOD and Lapeer filed this adversary proceeding on May 11, 2011, the Trustee persuaded the Bankruptcy Court to hold the prosecution of this adversary proceeding in abeyance for nine more months to permit the Trustee to continue her efforts to take discovery relating to the transactions among TTOD, Lapeer and Dott Acquisition.

Once the stay was lifted, the Trustee had more opportunity to take discovery. Initially when the stay was lifted, the Trustee, TTOD and Lapeer stipulated to hold discovery in abeyance while they sought to have the District Court for the Eastern District of Michigan withdraw the reference

of this adversary proceeding to the Bankruptcy Court. But once the District Court entered the Reference Opinion on October 26, 2012, this adversary proceeding was no longer held in abeyance. On January 7, 2013, the Court held a scheduling conference and set a deadline to complete discovery of September 1, 2013. Frey states in his affidavit that "several months" remain for discovery, but this is not exactly correct. It wasn't until July 9, 2013 that the Court stayed further discovery to consider the motions for summary judgment. That was six months after the scheduling conference, with less than two remaining months to take discovery. By any measure, there has been more than ample time for discovery.

The last two factors are a bit more complicated. Frey's affidavit demonstrates that the Trustee pursued many leads and that he, by his own account, "expended literally thousands of hours pursuing document discovery and interviewing possible witnesses . . . ." Generally speaking, the record shows that the Trustee took full advantage of the long discovery period and pursued discovery aggressively. However, it was not until May 28, 2013 that the Trustee issued a deposition notice for Gatt, and it was not until June 5, 2013 that the Trustee issued a notice of deposition for Kojaian. To be fair to the Trustee, as explained above, the Court did stay discovery again on July 9, 2013 to hear the motion for summary judgment. But at that point, the Trustee already had the opportunity to take Rule 2004 examinations from January to May, 2011, for nine more months while TTOD and Lapeer were barred from prosecuting their adversary proceeding, and then, after January 7, 2013, another seven months to continue to take discovery before the Court held further discovery in abeyance pending the outcome of the motion for summary judgment. Although the Trustee conducted extensive discovery, it does not appear to have been targeted at getting to Gatt's or Kojaian's knowledge regarding the basic information in Dott Acquisition's schedules or in the

Trustee's allegations that Gatt acted improperly at the behest of TTOD. The Trustee has had more than enough time to depose Gatt and Kojaian.

Finally, a review of the docket shows that there were discovery disputes between TTOD and the Trustee. It appears that both parties were well represented and vigorously espoused their respective positions. At one point, the Trustee had to file a motion to compel the production of documents, which the Court granted. But TTOD and Lapeer had resisted in large part because of the extensive discovery that they had already provided in response to the Trustee's Rule 2004 examinations taken during the nine months that discovery was stayed in this adversary proceeding. The Court does not have any evidence to show that TTOD and Lapeer somehow improperly thwarted the Trustee's discovery.

In other circumstances, the Court might be persuaded by an argument that summary judgment is premature where the time to take discovery has not yet closed and the non-moving party has identified two witnesses that it wishes to depose. But not in the circumstances of this case. This is an extraordinary case. The Trustee has taken an enormous amount of discovery already. More importantly, there is nothing in Frey's affidavit or in the Trustee's brief that explains what possible facts the Trustee still expects to obtain from Gatt and Kojaian that the Trustee does not already have in her possession. Neither Frey's affidavit nor the Trustee's brief explain how the taking of these depositions and the continuing of discovery in this adversary proceeding will enable the Trustee to prosecute the claims she has made in her counterclaim or defend the claims made in the complaint filed by TTOD and Lapeer. Ordinarily, the Court prefers to defer summary judgment motions until after the close of discovery. But where, as here, there has been ample time for discovery and there is no demonstration that further discovery will change the legal and factual deficiencies in the

Trustee's counterclaim and defenses to the complaint, the Court sees no purpose to be served by delaying ruling on the motions before it.

<u>**Conclusion**</u>

TTOD and Dott Acquisition struck a deal for TTOD to sell its business to Dott Acquisition years ago. As detailed in this opinion, the transaction evolved and eventually collapsed into litigation between them. They litigated extensively in four different state court proceedings. When the litigation was over, TTOD had won in every court, and Dott Acquisition had lost in every court. All of the judgments became final without appeal. Dott Acquisition then signed a Settlement Agreement, releasing any possible claims that it may have clung to. That should have been the end of Dott Acquisition's claims. But it was not.

An involuntary bankruptcy petition was filed against Dott Acquisition. Apparently untroubled by Dott Acquisition's losses in state court, and his own statements in the Settlement Agreement, Gruits fed the Trustee information that he apparently believed would prompt the Trustee to try to change the final score of all of the lawsuits between TTOD and Dott Acquisition. The unfortunate result has been years of additional litigation in the Bankruptcy Court in a quixotic attempt to rewrite the state court litigation and make the bankruptcy estate the owner of TTOD's and Lapeer's assets.

TTOD and Lapeer's complaint for declaration of ownership of property is relatively simple. In contrast, the Trustee's multi-count counterclaim raises many legal theories. Although long on theory, it is short on facts from anyone other than Gruits, the principal protagonist in all of Dott Acquisition's unsuccessful state court litigation. The Trustee's answer to that problem is to take more discovery. That argument has some facial appeal. Ordinarily, the Court is reluctant to grant summary judgment prior to the close of discovery, particularly in cases where the facts may be

complex. But not here. As explained above, the Trustee had ample opportunity to take discovery, learn the facts, and review and understand all of the state court litigation between TTOD and Dott Acquisition. The record shows that the Trustee did just that, obtaining voluminous documents from many sources. But there is nothing in the record that shows that more discovery will either fix the deficiencies in the Trustee's claims or change the fact that Dott Acquisition already litigated and lost most of those claims before this bankruptcy case was ever filed. Where it is clear, as here, that there are no genuine issues of material fact regarding such claims, no purpose is served by delaying disposition of the two motions before the Court. The motions are ripe for a decision now.[17]

For all of the reasons explained in this opinion, the Court denies the Trustee's motion for partial summary judgment. The Court grants TTOD and Lapeer's motion for summary judgment in all respects, except for (i) that portion of count V of the Trustee's counterclaim, seeking recovery of preferential transfers under § 547 of the Bankruptcy Code, that pertains to alleged transfers of additional equipment and other personal property during the 90 days before the involuntary petition was filed; and (ii) that portion of count VII of the Trustee's counterclaim that seeks to recover the transfer of such additional equipment and other personal property as a constructively fraudulent transfer under § 548(a)(1)(B) of the Bankruptcy Code.

Signed on February 13, 2014

_____/s/ Phillip J. Shefferly_____
Phillip J. Shefferly
United States Bankruptcy Judge

---

[17] The Court has taken into consideration all of the arguments that the Trustee raised and the exhibits she provided, including those filed under seal, even if not specifically mentioned in this opinion.